A93A1519. SOUTHEASTERN UNDERWRITERS, INC.
v. AFLAC, INC. et al.
(436 SE2d 556)

COOPER, Judge.
This appeal arises from a breach of contract action brought by

Southeastern Underwriters, Inc. (Southeastern) against AFLAC, Inc. Southeastern appeals from the trial court's grant of summary judgment to AFLAC.

AFLAC, a company based in Columbus, Georgia, was established in 1955 by John Amos (Amos) for the purpose of selling various lines of insurance. In 1978, AFLAC entered into an agreement with Underwriters South, Inc., a company owned by Mr. and Mrs. Donald Land, the son-in-law and daughter of Amos. Pursuant to the agreement, AFLAC appointed Underwriters South as AFLAC's state sales coordinator for its business in the State of Florida. The agreement with Underwriters South was in effect until 1987, when AFLAC entered into an agreement with Southeastern, a corporation wholly owned by Donald Land (Land). The 1987 agreement appointed Southeastern as AFLAC's state sales coordinator for the State of Florida and provided for Southeastern to be paid commissions based on the premiums collected from insurance policies sold by AFLAC affiliates under the supervision of Southeastern. The agreement also contained an acceleration clause which provided, in relevant part, as follows:

"In the event said compensation and commissions due by [AFLAC] to [Southeastern] are not paid as provided herein, or in the event this agreement is terminated, [Southeastern] may demand the following procedure at any time after termination:

"(a) All such compensation and commissions due [Southeastern] for future new and renewal premiums, on the assumption that the contract would remain in effect until [Southeastern's] voluntary termination, shall be ACCELERATED and shall immediately be due and payable to [Southeastern] by [AFLAC] after determination of the proper amount due on projected renewals, less proper discount for prepayment.

"(b) In the event the parties hereto can agree on such proper amount, the same shall immediately be paid by [AFLAC] to [Southeastern]."

The agreement also gave both parties the right to terminate the agreement, with or without cause, upon 30 days written notice. Land testified in his deposition that the acceleration clause was included in the agreement at the request of Amos to discourage a hostile takeover. Land explained that although the state sales coordinators had corporate identities, those corporations were merely conduits for family members of Amos and that Amos was concerned that a hostile takeover could result in his family members, who were in key positions, losing their jobs. Land also testified that he and Amos agreed that under the acceleration clause, AFLAC would continue paying the commissions until Land retired. Land stated that he planned to retire when he reached the age of 65 in the year 2020. On April 23, 1990, AFLAC gave Southeastern 30 days written notice of its intention to

terminate the agreement and assign all of its affiliates in Florida to a new state sales coordinator. The termination was effective May 23, 1990, and in September 1990, Southeastern filed a lawsuit against AFLAC, contending that pursuant to the acceleration clause, it was entitled to recover commissions on all premiums for new and renewal policies collected by AFLAC between April 23, 1990 and the year 2020. The trial court granted summary judgment to AFLAC and denied Southeastern's motion for partial summary judgment, and Southeastern appeals.

1. In two enumerations of error, Southeastern contends that the trial court erred in concluding that the acceleration clause in the agreement was unenforceable. AFLAC contends that the acceleration clause is unenforceable because it is only an agreement to agree on commissions due at a later date and that the clause provides no basis for calculating the commissions. " ' "Unless all the terms and conditions are agreed on, and nothing is left to further negotiations, a contract to enter into a contract in the future is of no effect." (Cit.) "An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto." (Cit.)' [Cits.]" *Jackson v. Easters*, 190 Ga. App. 713, 715 (1) (379 SE2d 610) (1989). Subparagraph (b) of the agreement clearly contemplates that there must be a subsequent agreement as to the amount of commissions due. In addition, Donald Land testified in his deposition that he understood that future negotiations would be necessary to determine the amount of commissions due Southeastern. We conclude that the acceleration clause is merely an agreement to negotiate in the future about the amount of commissions due and payable upon termination of Southeastern, and as such it is unenforceable. See *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400 (2) (422 SE2d 277) (1992).

The acceleration clause also lacks "such definite terms and certainty that [no] court may determine what has been agreed upon. . . ." *Cann v. MARTA*, 196 Ga. App. 495, 496 (1) (396 SE2d 515) (1990). While it is not necessary for a contract to state all the details of the agreement, it is axiomatic that for a contract to be enforceable, the material terms of that contract cannot be left to future negotiation. See *Knoxville Med. Investors, Ltd. v. Nat. Healthcorp, L.P.*, 192 Ga. App. 460, 462 (3) (385 SE2d 110) (1989). "If the parties do not create a complete binding agreement, the courts are powerless to do it for them, or afford a remedy for a breach. [Cit.]" *Sierra Assoc., Ltd. v. Continental Illinois Nat. Bank &c. of Chicago*, 169 Ga. App. 784, 791 (3b) (315 SE2d 250) (1984). We conclude that the acceleration provision is unenforceable because it lacks sufficient definiteness and certainty regarding the amount of commissions due or the manner in which those commissions are to be calculated.

2. Southeastern also contends that the trial court erred in failing

to consider parol evidence to establish the duration of AFLAC's obligation to pay commissions and the anti-takeover purpose of the acceleration provision. Southeastern argues that this extrinsic evidence is necessary to arrive at a proper interpretation of the agreement. " 'There are instances when certain deficiencies or ambiguities may be explained by facts aliunde the instrument itself. However, information of such extrinsic nature may not be utilized to supply that which is essential to constitute a valid contract. (Cit.)' [Cit.]" *Demer v. Capital City Cable*, 190 Ga. App. 40, 43 (2) (378 SE2d 162) (1989); *Wiley v. Tom Howell & Assoc.*, 154 Ga. App. 235 (267 SE2d 816) (1980).

Moreover, the agreement contains a merger clause which provides: "This agreement shall constitute the entire agreement between the parties covering all insurance sales and is intended to replace all contracts and amendments to contracts dated prior hereto, and any previous verbal promises or statements by whomsoever made; and no supplement hereto shall be binding upon [AFLAC]. . . ."

" 'Evidence as to an alleged understanding which is antagonistic to and inconsistent with the terms of the instrument is inadmissible to vary such terms. . . . (Cits.)' [Cit.]" *Leventhal v. Seiter*, 208 Ga. App. 158, 162 (4) (430 SE2d 378) (1993). Southeastern's contention that parol evidence should have been considered to establish the duration of AFLAC's obligation to pay commissions is in direct contradiction to the merger clause in the agreement as well as the provision found in paragraph 4 allowing either party to terminate the agreement upon 30 days written notice. Therefore, Southeastern's argument that the trial court should have considered extrinsic evidence is without merit.

For the foregoing reasons, we conclude that the trial court did not err in granting summary judgment to AFLAC.

*Judgment affirmed. Beasley, P. J., and Smith, J., concur.*

DECIDED OCTOBER 5, 1993.

*Denney, Pease, Allison, Kirk & Lomax, John W. Denney, Allen C. Levi*, for appellant.
*Champion & Champion, Forrest L. Champion, Jr.*, for appellees.