## A94A2474. DEPARTMENT OF TRANSPORTATION v. HARDAWAY COMPANY.
### (454 SE2d 167)

SMITH, Judge.

The Hardaway Company, the general contractor on a highway construction project for the Georgia Department of Transportation ("DOT"), brought this action seeking damages arising out of its work on the project. A discovery dispute arose concerning the production of documents in the personal possession of a DOT employee. After the employee damaged and discarded the documents,[1] he reconsidered his actions, retrieved the documents, and provided them to DOT's counsel for production to Hardaway. Two disputes then arose concerning, first, the cost of reconstruction of the damaged documents, and, second, the inadvertent production of several pages of a "discrepancy log" prepared by DOT in response to a co-defendant's claim. The trial court ordered DOT to pay a total of $24,000 for reconstruction of the documents, and ordered the production of the remainder of the "discrepancy log." DOT appeals from this order.

1. Hardaway contends this appeal should be dismissed for failure to follow the interlocutory application procedures of OCGA § 5-6-34 (b). However, the trial court's order falls within the "collateral order" exception to the final judgment rule established in *Scroggins v. Edmondson*, 250 Ga. 430, 431-432 (1) (c) (297 SE2d 469) (1982). Under this three-part test, a collateral order is directly appealable if it (1) completely and conclusively resolves the issue appealed; (2) concerns an issue which is "substantially separate" from the basic issues presented in the complaint; and (3) would result in the loss of an important right and is "effectively unreviewable on appeal." Id. The trial court's order compelling production of material alleged to be protected work product meets these requirements. It completely resolves the discovery issues, which are substantially separate from the main claim. Moreover, once produced, the material cannot be returned to its previous confidential state, and an order compelling its production would be effectively unreviewable after the litigation has concluded. In contrast, the assessment of costs, expenses, or attorney fees does not meet these requirements, because an erroneous or excessive payment may be refunded at a later time. However, this portion

---

[1] As noted below, the parties strongly disagree on the extent to which the documents were damaged.

of the trial court's order is appealable pursuant to OCGA § 5-6-34 (d). See *Costanzo v. Jones*, 200 Ga. App. 806, 811 (3) (409 SE2d 686) (1991).

2. DOT contends the "discrepancy log" prepared by one of its employees as an analysis of a co-defendant's claim is protected work product because it was produced in anticipation of litigation.

OCGA § 9-11-26 (b) (3) provides that "a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[2] A trio of recent decisions has established a definition of material "prepared in anticipation of litigation." In essence, material obtained or collected by a party is protected from discovery as work product even "before claim is instituted" if "reasonable grounds exist to believe that litigation is probable. . . ." *Lowe's of Ga. v. Webb*, 180 Ga. App. 755, 757 (350 SE2d 292) (1986). The material need not contain the mental impressions, conclusions, opinions, or legal theories of the preparer, but need only have been prepared in anticipation of litigation. *Tobacco Road v. Callaghan*, 174 Ga. App. 539 (330 SE2d 768) (1985).

In determining the existence of reasonable grounds to anticipate probable litigation, the decisions have focused on the conduct of the potential claimant and steps taken to respond to that conduct. In *Warmack v. Mini-Skools, Ltd.*, 164 Ga. App. 737 (297 SE2d 365) (1982), an inquiry by a potential claimant regarding the existence of accidental insurance coverage was a sufficient ground for belief that litigation was probable. The witness statements and notes taken by a claims adjuster after the inquiry were held to be material prepared in anticipation of litigation. *Warmack*, 164 Ga. App. at 739. Where a potential claimant verbally indicated that a party "had not heard the last of the matter" and "would pay," and the party as a result took the written and oral statements of witnesses, the statements were protected. *Webb*, 180 Ga. App. at 757.

Hardaway contends these decisions are inapplicable because they involve personal injury claims, while this case arose in contract or quantum meruit. While *Warmack* and *Webb* involve tort claims for personal injury, the nature of the claim in *Tobacco Road* is not

---

[2] Hardaway suggests that such a representative should ordinarily be limited to legal counsel. The statute explicitly provides to the contrary.

stated, and we see no basis for a distinction on this ground. Whether a claim sounds in tort or contract is irrelevant to the issue of whether a party has reasonable grounds to believe that litigation is probable.

For example, the defendant store in *Webb* routinely investigated every incident involving injury to a customer. "In most cases, the store owner knows only an injury has occurred and whether any 'claim' or 'litigation' will result surely could be nothing more than speculation until the demands of the injured visitor are made known." *Webb*, 180 Ga. App. at 757. However, the incident at issue was taken out of the category of a mere routine investigation by the customer's statement that the store "would hear more" and "would pay." Id. Similarly, the routine administration of a contract would give no reason to anticipate litigation, but notice of a contract dispute or claim outside the terms of the contract could provide reasonable grounds to believe that litigation is probable. We must determine whether DOT has met its burden of showing such reasonable grounds as a matter of law.

The "discrepancy log" was prepared in response to a claim for extra work submitted by Parsons, Brinckerhoff, Quade & Douglas, Inc., a consultant and co-defendant in this action. Employees of DOT testified at length regarding the unusual nature of this claim. The claim was for $834,798, an unusually large amount, and the type of claim was also unusual. One employee of DOT testified he had seen fewer than ten such claims since 1964. The amount was disputed, as was authorization for some of the extra work claimed. A DOT official not ordinarily involved in handling such claims was put in charge of investigating the claim. He had never seen a consultant claim of this size or type in his 30 years with DOT. He ordered the preparation of the "discrepancy log" to assist him in evaluating and responding to the claim. A DOT employee reviewed the project plans for revision dates and identified work based upon authorized revisions and that which appeared unauthorized. The material was not handled in the usual channels, but by direct communication between the supervisor and his assistant, bypassing the secretarial staff. This procedure was unusual in the supervisor's experience, and according to his assistant was a "unique situation" and not part of his regular duties. Asked if he anticipated litigation, the supervisor testified: "by the nature of the claim and magnitude of the monies involved, I was certainly thinking that they might." Although he did not "know that Parsons has ever threatened litigation as such . . . it was certainly in my mind that they might and probably would."

Employing the analysis established in *Warmack* and *Webb*, there is uncontradicted evidence of a claim presented for extra work outside the scope of the written contract. The claim itself was unusually large, in an amount unheard of by one witness in thirty years of employ-

ment with DOT. At least part of the claim appeared unauthorized. In response, a person not ordinarily involved in such matters investigated and negotiated the claim. In preparing for his task, he ordered the making of a report or log from contract documents. In short, a written claim and demand for payment outside the terms of the contract was presented, and in response to that claim DOT employees created the materials at issue. This showing is sufficient as a matter of law to meet DOT's burden under OCGA § 9-11-26 (b) (3).

However, this does not end the inquiry. The trial court did not apply the second step of the prescribed procedure for determining the discoverability of protected materials under OCGA § 9-11-26 (b) (3) and did not determine whether Hardaway can show a substantial need and undue hardship in the development by other means of the information sought. *Webb*, 180 Ga. App. at 758. We therefore vacate the trial court's order compelling production of the discrepancy log and remand to the trial court for further proceedings.

3. DOT also enumerates as error the trial court's award of reimbursement for the cost of reconstructing 502 pages of documents in the amount of $12,000, in addition to $12,000 already paid by DOT, for a total cost of $24,000.[3]

After the employee retrieved the torn documents, he delivered them to DOT's attorney and spent "a couple of hours" reassembling them before they were produced to Hardaway. Hardaway retained Action Testing to reconstruct the documents. Action Testing proposed the expenditure of 1,300 man-hours within a ten-day period, with forensic chemists, forensic technicians, and a scanning electron microscope. Ultimately Action Testing submitted a bill for the work of sixteen technicians and two engineers working in twelve-hour shifts over the course of six days, for a total of $58,080 but applying a "cap" of $24,000.

The trial court found no misconduct on the part of DOT or its employees, and DOT did not refuse to comply with an order compelling production. The award of expenses therefore must have been made pursuant to OCGA § 9-11-37 (a) (4), as "the reasonable expenses incurred in obtaining the order." See *Orkin Exterm. Co. v. McIntosh*, 215 Ga. App. 587 (452 SE2d 159) (1994).

This Code section requires reimbursement only of "reasonable" expenses. Decisions interpreting similar statutes likewise require a showing of reasonableness. See, e.g., *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (433 SE2d 606) (1993) (award of attorney fees must be supported by showing of reasonableness); *American Reliable Ins. Co. v. Woodward*, 143 Ga. App. 652, 654 (3) (239 SE2d

---

[3] This amounts to a cost of $47.81 per page.

543) (1977) (award of "reasonable attorney's fees" under OCGA § 33-4-6 must be "within the range of evidence as to the reasonable value thereof"). This determination is a matter for the discretion of the trial court. See, e.g., *Contract Harvesters v. Clark*, 211 Ga. App. 297, 299 (2) (439 SE2d 30) (1993) ("reasonable and necessary attorney's fees and expenses" under OCGA § 9-15-14 (f)). Here, the trial court expressed some doubt regarding the expenses, stating it was "inclined to agree that the cost appears large." However, the trial court made no determination of reasonableness, concluding that DOT should pay the entire charge because "the fact remains that an employee of GDOT necessitated the reconstruction." While the trial court's decision to require DOT to pay a *reasonable* cost of reconstruction is certainly justified on this basis, the trial court did not address the Code requirement that the expenses be "reasonable," an issue which was in substantial dispute. The DOT retained a document reconstruction expert who testified the work should have taken approximately 70 hours, or $3,360 at Action Testing's hourly rate. Even the factual extent of the work performed was hotly disputed by the parties.[4]

In the assessment of discovery costs, a standard of reasonableness, enforced by the trial court, is a practical necessity. Particularly where, as here, the expenses at issue apparently have not yet been paid by the party incurring them,[5] the absence of such a standard eliminates any incentive to be frugal or even reasonable in charges that will be paid by the opposing party.[6] The trial court must hold the parties before it to the statutory requirements and make a determination of reasonableness.

Accordingly, the judgment will be reversed and the record remanded to the trial court for its findings on the second phase of the discovery of protected trial preparation materials and on a reasonable cost for document restoration.

*Judgment reversed and case remanded with direction. McMurray, P. J., and Pope, P. J., concur.*

---

[4] For example, an employee of Action Testing apparently stated that the large bill, the use of an electron microscope, and the services of an expert engineer reconstructionist were necessary because "the documents were torn into very small pieces." DOT's counsel, by affidavit, denied this, stating that his personal inspection showed the documents were at most torn into three or four pieces, and had already been reassembled in large part. The original documents are available, though not part of the record before this court, so that their true condition should be readily ascertainable.

[5] In Hardaway's motion, it acknowledged that only the $12,000 previously paid by DOT had been remitted to Action Testing, and sought payment "if the matter cannot be resolved without further payment to Action Testing."

[6] Action Testing's bill originally included $700 for copier repairs. The trial court disallowed this expense.

DECIDED FEBRUARY 9, 1995.

*Michael J. Bowers, Attorney General, George P. Shingler, Senior Assistant Attorney General, Shapiro, Fussell, Wedge & Smotherman, Ira J. Smotherman, Jr., David L. Tank,* for appellant.

*King & Spalding, Joseph B. Haynes, Charles K. McKnight, Jr., Katharine F. Darnell, Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair,* for appellee.