A95A0915, A95A0916. McCAUGHEY v. MURPHY; and vice versa.
(485 SE2d 511)

JOHNSON, Judge.

Joseph M. Murphy and Thomas K. McCaughey, two New York residents, formed Boxwood Associates ("Boxwood"), a Georgia limited partnership, in order to acquire, rehabilitate and operate the historic Lamar Building in Augusta, Georgia. After the venture failed, Murphy and McCaughey disputed who was responsible for certain debts. Murphy sued McCaughey to recover funds Murphy allegedly expended to fulfill partnership obligations which Murphy claimed that McCaughey, as general partner, had obligated McCaughey and the partnership to pay. Murphy's lawsuit, as amended, sought damages totaling millions of dollars and asked for an accounting pursuant to OCGA § 14-8-22. McCaughey counterclaimed against Murphy. The trial court then appointed an auditor to investigate all of the facts raised by the pleadings and the evidence and to make a report to the court pursuant to OCGA § 9-7-8.

The court-appointed auditor filed four separate reports and reviewed hundreds of pages of documents. The auditor ultimately determined that only Murphy was entitled to relief. He concluded that McCaughey was indebted to Murphy for 20 percent of the operating costs Murphy incurred after 1986. The auditor also determined that McCaughey was unjustly enriched at Murphy's expense.

The record discloses the following. From Boxwood's inception in late 1983 until October 7, 1987, McCaughey was the sole general partner, and Murphy and McCaughey were the only limited partners. During that time, McCaughey owned a fraction greater than a 50 percent interest in Boxwood, and Murphy owned the balance. On

October 7, 1987, Murphy also became a general partner.

From the beginning, McCaughey and Murphy intended to finance the project with tax-exempt industrial revenue bonds and not their own funds. The first bonds were issued in December 1983 for $5.4 million. Bank of America required personal guarantees by both Murphy and McCaughey before it would release the bond proceeds.

By mid-1986, the project was experiencing severe financial problems. In July 1986, James Troutman, the project manager, projected a $3.35 million shortfall in funds available for the renovation. According to McCaughey's testimony, at this point he advised Murphy he would not be responsible for any future funding of the project and wanted out of the partnership. McCaughey asserted the reason that he remained as a partner, however, was to assist with another tax-exempt bond issue to meet the projected shortfall.

It is undisputed that McCaughey did not comply with the partnership provisions for resignation and withdrawal. Notwithstanding McCaughey's claim that he remained as general partner to benefit Boxwood, the auditor determined that McCaughey remained as general partner in order to avail himself of approximately $200,000 in personal tax savings. Despite McCaughey's purported reluctance to continue with the project, he remained Boxwood's sole general partner incurring further obligations on its behalf. McCaughey continued to represent Boxwood and bound the partnership and himself and Murphy to complete the renovation even if funds from the bond proceeds were insufficient.

In December 1986, through Citibank, an additional $3.6 million in tax-exempt bonds were issued to finance the completion of the project. The repayment of these bonds was guaranteed by a Citibank letter of credit, which in turn was guaranteed by Murphy, McCaughey, and Wayside Associates, a New York limited partnership. Citibank required personal guarantees from McCaughey and Murphy. Both jointly and severally guaranteed any indebtedness to Citibank and guaranteed Boxwood's obligations including the provision in the loan agreement requiring the project's completion. The Citibank letter of credit was secured by collateral pledged by Murphy and McCaughey.

As Boxwood floundered, Murphy infused additional funds which went largely unmatched by McCaughey. In May 1987, Drexel, Burnham, Lambert Realty, Inc. ("DBLR"), a management company owned and controlled by Murphy, began funding the operation rather than Boxwood drawing down additional proceeds from the second bond issue. From January 1988 through June 1988, DBLR made advances to operate Boxwood. McCaughey claims DBLR did so without his permission. The auditor traced advances totaling $2,361,799 directly and indirectly to Murphy.

On April 21, 1988, Bank of America extended the letter of credit on the original $5.4 million bond issue with Murphy as the sole guarantor. After McCaughey refused to agree to renew as a guarantor, Bank of America consented to his release. The renovation and operation of the building proved unsuccessful. After the project collapsed, Boxwood defaulted on its obligations to the bond holders, and thus, to Bank of America and Citibank. Bank of America foreclosed on the Lamar Building in 1989 and reached a settlement with Murphy. Bank of America released Murphy from all liability except for one-half of any funds he recovered from McCaughey in his lawsuit and payment of $100,000. Citibank foreclosed on all assets held as security under its letter of credit, the $125,000 placed as security by McCaughey and about $1,100,000 of Murphy's personal assets.

In his final report, the auditor determined that McCaughey owed Murphy more than half a million dollars. The trial court adopted the auditor's findings then entered judgment against McCaughey, awarding Murphy $632,334. McCaughey directly appealed from the trial court's judgment, and Murphy cross-appealed.

This Court dismissed McCaughey's appeal and Murphy's cross-appeal for failure to follow discretionary procedures. The Supreme Court reversed after it decided that the auditor's report contained only factual findings thus making the judgment of the superior court directly appealable. *McCaughey v. Murphy*, 267 Ga. 64 (473 SE2d 762) (1996). We therefore reinstate both appeals for consideration on their merits. *Held*:

1. Dismissal orders previously entered are hereby vacated in both Case Nos. A95A0915 and A95A0916.

## Case No. A95A0915

2. McCaughey's sole enumeration of error is that the trial court erred in accepting the auditor's report and entering judgment against him. McCaughey contends that the theories of liability stated by the auditor are contrary to the pleadings, not supported by any facts, and are invalid as a matter of law.

The threshold question is whether an auditor seeking to allocate responsibility between two partners is free to disregard the partnership agreement and award damages based on a percentage of ownership not provided by the partnership agreement. From Boxwood's inception until October 7, 1987, McCaughey was the sole general partner and owned more than 50 percent of the partnership. The partnership documents required McCaughey and Murphy's mutual agreement on the terms of a withdrawal by McCaughey or any reduction in McCaughey's interest in Boxwood. Because the auditor

assumed that the parties intended to reduce McCaughey's partnership percentage at some future time, he arbitrarily reduced McCaughey's interest from slightly more than the 50 percent the Boxwood agreement provided to a 20 percent interest. After reducing McCaughey's partnership interest, the auditor correspondingly reduced McCaughey's liability to 20 percent. Having assumed McCaughey was liable only for 20 percent of the project from 1986 to the time of foreclosure, the auditor calculated that McCaughey owed Murphy $632,334.

For different reasons, both Murphy and McCaughey contend this finding is wrong. Neither, however, claims that the partnership agreement is not valid and enforceable. We find that because the partnership agreement does not permit the unilateral withdrawal of a partner, there is no basis for the auditor's conclusion that McCaughey could have withdrawn from the partnership whenever he desired. Similarly, McCaughey's liability could not be altered without complying with the terms of the partnership agreement. When contracts are clear and unambiguous, they must be enforced according to their terms. *Johnston v. Almand*, 213 Ga. App. 553, 555 (2) (b) (445 SE2d 347) (1994); see *Sayles v. Brown*, 178 Ga. App. 755, 758 (1) (344 SE2d 539) (1986) (trial court not at liberty to revise a contract under the guise of construing it).

An auditor's factual findings having the approval of a trial court must be affirmed if there is any evidence to support them. See *Walls v. Savage*, 243 Ga. 198, 199 (1) (253 SE2d 183) (1979). Here, the evidence fails to support the findings because the auditor erroneously assumed the partnership agreement did not control the parties' relationship. Accordingly, the trial court's judgment adopting the auditor's findings must be reversed.

### Case No. A95A0916

3. Murphy claims the trial court erred in failing to recognize his right of contribution against McCaughey, as co-guarantor for advances required by several agreements. The auditor found Boxwood had multiple obligations. In 1987, there were contractual obligations with Bank of America, Citibank, the local development authority, and McCrory Construction Company. According to the Citibank guaranty, Murphy, McCaughey and Wayside Associates, a New York limited partnership, were jointly and severally liable to the bank and were contractually obligated to ensure the project's completion. Also, according to the "Building Review Agreement" between Bank of America and Boxwood signed in January 1985, the borrower agreed to provide funds from sources other than the bonds in the event that project costs exceeded bond proceeds. The auditor deter-

mined that both partners, "with fully [sic] knowledge, contributed cash, pledged personal assets and guaranteed debts of the partnership." Plainly, based on several agreements, both Murphy and McCaughey were contractually obligated to complete the project and were both bound to provide the funds from sources other than the bonds if necessary. See generally *Nannis Terpening & Assoc. v. Mark Smith Constr. Co.*, 171 Ga. App. 111, 115 (1) (318 SE2d 89) (1984); compare *Westminster Properties v. Atlanta Assoc.*, 250 Ga. 841, 842-843 (1) (301 SE2d 636) (1983).

McCaughey incorrectly claims that according to the terms of the partnership agreement, his consent was necessary in order for him to be obligated. As general partner, McCaughey was "jointly and severally liable for all debts, obligations, and liabilities of the partnership." OCGA § 14-8-15 (a); see *Kochis v. Mills*, 233 Ga. 652 (212 SE2d 823) (1975). See also OCGA § 23-2-71. Even assuming Murphy lacked the authority to obligate McCaughey for particular loans Murphy made *to* the partnership, McCaughey, as general partner, already had personal liability for the obligations *of* the partnership to other entities. According to the Citibank documents, both partners had personal liability. The auditor found that Murphy and DBLR supplied funds "within the normal course of business and in compliance with partnership obligations." The auditor determined that Murphy or DBLR advanced $2,361,799 to pay Boxwood's obligations between May 28, 1987 and September 15, 1988.

Where several persons guaranty the same principal by one or more distinct instruments and one person pays more than an equal share of the sum, he may compel contribution from his co-guarantor under OCGA §§ 10-7-1 and 10-7-50; *Dever v. Lee*, 188 Ga. App. 483, 486 (3) (373 SE2d 224) (1988). The record clearly indicates Murphy paid substantially more than McCaughey when both were equally bound on the same instruments. Accordingly, we remand for a determination by the trial court of the amount of contribution McCaughey owes to Murphy for valid partnership obligations paid by Murphy pursuant to the Citibank obligations up to the date of foreclosure. We also remand for a determination by the trial court as to whether Murphy properly expended any other amounts on behalf of the partnership pursuant to partnership obligations and for which McCaughey was responsible as general partner or under any contractual agreement.

4. Based on the above holding, Murphy's remaining enumerations are moot.

*Dismissals vacated. Judgments reversed and cases remanded with direction. Birdsong, P. J., and Smith, J., concur.*

Decided March 6, 1997 —
Reconsideration denied April 3, 1997.

*Hull, Towill, Norman & Barrett, David E. Hudson*, for appellant.
*Fulcher, Hagler, Reed, Hanks & Harper, James W. Purcell, Elizabeth McLeod*, for appellee.