A99A0002. MANSELL 400 ASSOCIATES, L. P. v. ENTEX
INFORMATION SERVICES, INC.
(519 SE2d 46)

POPE, Presiding Judge.

On October 14, 1993, Mansell 400 Associates, L. P. and Entex Information Services, Inc. entered into a written commercial lease agreement whereby Mansell leased to Entex approximately 6,492 square feet of office space in Building 20 of a complex of buildings known as the Mansell 400 Business Center. The lease term was five years and two months, running from November 1, 1993 through December 31, 1998.

Paragraph 40 of the lease provided:

If Tenant is not nor has been in Default hereunder, thirty-two (32) months or forty-four (44) months, respectively, after the Lease Commencement Date, Tenant may notify Landlord in writing that it desires to expand the Premises by at least thirty-five percent (35%) and Landlord and Tenant *shall enter into negotiations* to expand or relocate the Premises within the Mansell 400 Business Center owned by Landlord. If Landlord does not have space to expand or relocate Tenant, then within ten days after Landlord notifies Tenant that there is no available space for Tenant to expand or relocate, Tenant may give notice of its intent to cancel this Lease one-hundred eighty (180) days after such notice (hereinafter called the "Cancellation Date"). On the Cancellation Date, Tenant shall have complied with all terms and conditions of this Lease and shall pay to Landlord $60,220.32 if the Cancellation Date is during the thirty-eighth (38th) month of the Lease Term or $48,025.54 if the Cancellation Date is during the fiftieth (50th) month of the Lease Term. If the Premises are expanded or relocated as a result of the notice during the thirty-second month (32nd) of the Lease Term, then this paragraph shall be of no further force in effect during the Lease Term.

(Emphasis supplied.) On June 29, 1994, during the eighth month of the lease, the parties signed a written amendment of the lease ("First Amendment") which provided in part that the leased premises would be expanded by 2,450 square feet.

On June 26, 1996, during the 32nd month, Entex notified Mansell that in accordance with paragraph 40 it desired to expand the leased premises by at least 35 percent. On July 5, Mansell responded contending that the First Amendment rendered paragraph 40 of the original agreement inoperative. One month later Mansell conveyed a proposal for additional space (Suite 200 in Building 20) "conditioned on [an] existing tenant moving to other space they have identified." The letter indicated Mansell was negotiating a lease termination with the existing tenant. On August 15, Entex notified Mansell in writing that it needed a firm commitment for additional space and that the terms offered by Mansell for the proposed expansion were not acceptable. Entex requested a reply no later than August 19 and stated, "If the issues set forth above cannot be resolved, we intend to exercise our termination option under paragraph 40 of the Lease." Mansell's reply four days later indicated the current tenant of Suite 200 had yet to cancel its lease. On August 21, Entex gave written notice of its intent to exercise its termination option. On September 23, Mansell gave formal notice that the tenant in Suite 200 agreed to move. Entex vacated the premises in early 1997.

Mansell filed suit for rent owing on the remainder of the original term of the lease or, in the alternative, for the cancellation fee, and moved for summary judgment on these grounds. Entex filed a cross motion on the grounds it properly canceled the lease and no further rent was due. Entex agreed it owed the cancellation fee; its earlier tender of the fee had been rejected by Mansell. The superior court granted in part and denied in part Mansell's motion and granted summary judgment in favor of Entex finding the termination was valid and effective and Entex owed the cancellation fee. Mansell appeals. On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the moving party. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 803 (500 SE2d 591) (1998); *Lane v. Spragg,* 224 Ga. App. 606 (481 SE2d 592) (1997).

1. Mansell contends paragraph 40 is not enforceable because it is nothing more than an agreement to negotiate in the future. There are at least four provisions in paragraph 40: an agreement the parties may negotiate at two specific points in the future about a possible expansion, a right for Entex to cancel if there is no available space, the terms of cancellation, and a limitation on future expansion if expansion results from notice in the 32nd month.

Whether the first provision is enforceable is not relevant to the

issue presented;[1] neither party is attempting to enforce the agreement to negotiate. Further, regardless of whether the first provision is enforceable, the cancellation provision of paragraph 40 is sufficiently separate and independent to be enforced on its own. Paragraph 28 of the agreement provides,

> If any term or provision of this Lease shall be invalid or unenforceable, the remaining terms and provisions hereof shall not be affected thereby; if the application of any term or provisions of this Lease to any person or circumstance shall to any extent be invalid or unenforceable, such term or provision shall remain applicable as to those persons or circumstances to which it shall be valid and enforceable; and each term and provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

By this paragraph the parties agreed the cancellation provision would remain enforceable even if the provision for future negotiations was held invalid.

2. Mansell contends Entex could not exercise its option under paragraph 40 because it was in default since it vacated the space on January 16, 1997. Under a plain reading of paragraph 40 the parties' intentions are clear; Entex was required not to be in default either prior to or at the time it exercised the option to request expansion. See OCGA § 13-2-3. There is no evidence Entex failed to meet this requirement. Any subsequent possible default by Entex is irrelevant. If Entex's cancellation was effective, it was bound by the lease to vacate "[n]o later than the last day of the Term." We find no provision prohibiting Entex from vacating earlier.

3. Mansell contends the First Amendment eliminated Entex's option to request expansion in the 32nd month of the agreement. The last sentence of paragraph 40 makes clear the parties intended that Entex could request expansion only once, at either the 32nd or the 44th month. Pursuant to the First Amendment the parties agreed to an additional expansion in the eighth month. However, the amendment also provided, "Except as expressly modified by this First Amendment, the Lease shall remain in full force and effect." The First Amendment is not ambiguous; Entex's option to request expansion in either the 32nd or 44th month was not eliminated.

4. Mansell contends it never triggered the cancellation provision because it never gave notice that there was no available space; rather

---

[1] An agreement to negotiate in the future may be different than an agreement to agree in the future. Compare *Southeastern Underwriters v. AFLAC*, 210 Ga. App. 444, 446 (1) (436 SE2d 556) (1993) (an agreement to agree in the future is not enforceable).

it gave notice that space was available in a reasonable time after Entex's request. Entex argues Mansell failed to give notice there was space available until one month after Entex gave notice of cancellation and that Mansell's first three written responses to the request constitute notice of no available space.

The plain terms of paragraph 40 provide that Entex could cancel the lease "within ten days after Landlord notifies Tenant that there is no available space. . . ." The paragraph does not provide a deadline for when Mansell was required to notify Entex that there was no available space. If no definite time is stated for the performance of a contract, the presumption is that the parties intended that performance would be had within a reasonable time. *Parker v. Futures Unlimited*, 157 Ga. App. 520, 521 (278 SE2d 99) (1981); *Evans v. Brown*, 196 Ga. 634, 638 (27 SE2d 300) (1943). Without a deadline, the provision in the lease that time is of the essence does not alter this conclusion. See generally *Mangum v. Jones*, 205 Ga. 661, 667 (54 SE2d 603) (1949) (for time to be treated as of the essence there must be some expression of a certain time to perform). See also *State Hwy. Dept. v. Hall Paving Co.*, 127 Ga. App. 625, 630 (4) (194 SE2d 493) (1972) (definite number of days to complete is sufficiently certain for making time of the essence). What is a reasonable time is a question of fact to be decided by the jury. See, e.g., *Taliafaro, Inc. v. Rose*, 220 Ga. App. 249, 251 (2) (469 SE2d 246) (1996); *Parker v. Futures Unlimited*, 157 Ga. App. at 521. Similarly, whether Mansell's correspondence prior to September 23 constitutes notice under the contract that no space was available is a question of fact.

Therefore we reverse and remand for a factual determination of whether Mansell gave notice of no available space or failed to give notice of available space in a reasonable time. If it did either, then Entex properly terminated the lease and Entex owes the cancellation fee. If Mansell gave reasonable notice of available space, cancellation was not triggered and Entex is liable for the full term of the original lease. Accordingly, issues of interest and attorney fees must be revisited.

5. During discovery, the trial court granted in part and denied in part Mansell's motion to compel based on Entex's failure to properly respond to Mansell's discovery requests. Mansell sought an order regarding four interrogatories and eight document requests. The court granted relief on all but two of the document requests. The court also granted Mansell's corresponding request for attorney fees but only awarded $600 of the $2,300 which Mansell's counsel testified he incurred pursuing the motion. Mansell contends it was entitled to its entire fee.

Mansell relies on the trial court's finding that most of Entex's discovery objections were not substantially justified and on OCGA

§ 9-11-37 (a) (4) (A), which provides that if the court grants the motion it "shall" require the non-movant to pay the expenses incurred pursuing the motion, with certain exceptions.

But OCGA § 9-11-37 (a) (4) (C) provides: "If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." The court here determined that two of Mansell's discovery requests were not made with sufficient particularity. Thus OCGA § 9-11-37 (a) (4) (C) applies.

It is the general policy that absent abuse of discretion, Georgia appellate courts do not interfere with a trial court's broad discretion with regard to discovery matters. *Freeman v. Ripley*, 177 Ga. App. 522 (339 SE2d 795) (1986). Determination of the reasonable expenses is likewise a matter of discretion. *Dept. of Transp. v. Hardaway Co.*, 216 Ga. App. 262, 265-266 (3) (454 SE2d 167) (1995) overruled on other grounds *Johnson & Johnson v. Kaufman*, 226 Ga. App. 77, 82 (485 SE2d 525) (1997). But in this case the court indicated that it reduced the award because Mansell's only attempt to resolve the discovery dispute was one letter it sent in reply to Entex's discovery responses. Uniform Superior Court Rule 6.4 (b) provides, "Prior to filing any motion seeking resolution of a discovery dispute, counsel for the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the matters involved." There is no requirement in this rule that counsel for the movant make more than one attempt to resolve the discovery matter. Here, Mansell's counsel sent a letter one day after receiving the insufficient discovery responses explaining why the responses were inadequate, offering to speak by phone to resolve the issues, and asking for a response in nine days. Entex did not respond to the letter. At that point, Mansell was entitled to pursue a motion to compel and recover its fees for so doing. We therefore vacate the award of fees and remand for consideration of the amount in accordance with OCGA § 9-11-37 (a) (4) (C).

*Judgment reversed and remanded. Smith and Eldridge, JJ., concur.*

## ON MOTION FOR RECONSIDERATION.

With regard to Division 2 of the opinion, Mansell claims we overlooked a material fact in the record: a solemn admission in judicio by Entex that it vacated the premises on January 16, 1997. Entex never moved to withdraw the admission. Mansell contends this conclusively establishes that Entex failed to meet one requirement of cancellation found in paragraph 40: that in order to cancel, Entex had to be in full compliance with the lease on the cancellation date, February 17, 1997, and that Entex was in default because it vacated on

January 16.

> Solemn admissions in judicio as made in the pleadings are conclusive against the party making them, unless formally withdrawn from the pleadings [cit.], and a party to a suit will not be allowed to disprove an admission made in his pleadings, unless it has been withdrawn from the record. [Cit.]

*Nat. Advertising Co. v. North American Ins. &c. Co.*, 122 Ga. App. 481 (1) (177 SE2d 510) (1970). But, the rule "applies only to admissions of fact and does not apply to opinions or conclusions. [Cits.]" *Aycock v. Calk*, 228 Ga. App. 172, 174 (491 SE2d 383) (1997). In *Sommerfield v. Blue Cross &c. of Ga.*, 235 Ga. App. 375, 378 (2) (509 SE2d 100) (1998), the defendant police officer's admission in his answer that he was acting as an employee of a private employer was held to be a legal conclusion and not binding on him.

Here the term "vacate" is used but not defined in the lease, and therefore it could mean either that all personnel have left the premises, that all personnel have left and all equipment and other property have been removed, or that the tenant has departed and ceased paying rent. Where a term is ambiguous, its construction is for the court and is a matter of law. OCGA § 13-2-1; see, e.g., *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (2) (381 SE2d 322) (1989) (use of "vacate" in certain contractual provision not ambiguous). It is the duty of the court to attempt to resolve the ambiguity by applying the rules of construction. OCGA § 13-2-2. Because the term "vacate" was ambiguous and had to be construed, the meaning of Entex's admission was a question of law, and Entex was not bound by the admission.

DECIDED JUNE 3, 1999 —
RECONSIDERATION DENIED JULY 30, 1999

*Schreeder, Wheeler & Flint, Timothy C. Batten*, for appellant.
*Savell & Williams, John C. Parker, Lisa J. Bucko*, for appellee.