A00A0675, A00A0676. DEPARTMENT OF HUMAN RESOURCES v. CITIBANK F.S.B. et al.; and vice versa.
(534 SE2d 422)

ELDRIDGE, Judge.

This case involves a complex national contract between Citibank F.S.B. and Citicorp Services, Inc. ("Citibank") as performing parties and Georgia Department of Human Resources ("DHR") for the electronic benefits transfer ("EBT") for delivery of government benefits, state and federal, to recipients of Social Security, Temporary Aid to Needy Families, food stamps, Aid to Families with Dependent Children, unemployment benefits, and other financial benefits by automated teller machine-like means and other electronic means. Citibank had similar contracts with the U. S. Department of the Treasury and other southern states. The numerous documents com-

---

[8] See OCGA § 16-8-41 (b).

prising the Contract in its entirety provided for a "renegotiation clause" in which the parties agreed to renegotiate the Contract "if federal and/or state revisions of applicable law or regulations make changes in the contract necessary." As part of the customer service for the benefit recipients, Citibank had to provide toll-free long distance telephone access, i.e., a 1-800 number.

However, passage of the Telecommunications Act of 1996, 47 USC § 276 ("Act") after the Contract was entered into changed the fixed costs imposed on Citibank for calls made by recipients of government benefits from pay telephones as local access fees to the toll-free number. The Act caused holders of "toll-free" numbers, i.e., Citibank, to choose between (1) providing access to those toll-free numbers from pay telephones by paying local access fees, or (2) avoiding the local access fees by declining to provide access to pay telephones. The Contract obligated Citibank only to provide a "toll-free" telephone number that benefit recipients could call for customer service; this was not an obligation to pay the cost of or otherwise provide access to a pay telephone used to dial the toll-free number. DHR's refusal to renegotiate the Contract with Citibank breached the Contract, and Citibank had the right to terminate access from pay phones.

## Case No. A00A0675

1. The trial court, on grant of partial summary judgment to Citibank, determined that, under the terms of the Contract, (a) the Act allowed local access fees to be imposed by pay telephone owners for pay telephone calls to the toll-free numbers and that Citibank had to provide for benefit recipient service; (b) the Act and the subsequent regulations constituted the condition requiring renegotiation of the Contract; and (c) DHR's refusal to renegotiate the fixed price to reflect the additional cost for local access fees constituted a breach of the Contract. We agree with each such legal conclusion reached by the trial court to grant summary judgment to Citibank.

The Contract comprises five critical documents: (1) the "Invitation for Expressions of Interest to Acquire EBT Services for the Southern Alliance of States" ("IEI") issued on March 9, 1995, by the Treasury; (2) Citibank's Technical Response dated August 24, 1995; (3) Citibank's Best and Final Offer ("BAFO") pricing proposal dated September 26, 1995; (4) a Financial Agency Agreement between the Treasury and Citibank dated January 24, 1996; and (5) a separate contract dated July 1, 1996, between Citibank and DHR ("Georgia Contract"), which incorporates a set of "EBT Standard Terms and Conditions" that was developed by the participating states as basic terms shared in the respective individual state and Treasury con-

tracts with Citibank.[1]

Each separate Contract was for a fixed price and term. While providing a fixed price contract at the most competitive terms, Citibank required that the Contract be renegotiated as to fixed price upon change in the applicable laws that necessitated such renegotiation, because the EBT environment had risks of change in the law and regulations unforeseen by any party that could harm Citibank in additional basic costs.

Under the customer service obligation in the IEI, Citibank, as financial agent for the Treasury, would provide a toll-free long distance telephone number for benefit recipients to call for current account and benefit access information by a 1-800 number, twenty-four hours a day, seven days per week. Toll-free means no long distance toll charge by the carrier to the benefit recipient for long distance calls. See 26 CFR § 49.4252-2 (a) (1995) (defining toll charges); 47 CFR § 52.101 (f) (1995) (defining toll-free charges). However, Citibank had no contract obligation to pay local access fees for pay telephone access for benefit recipients. Thus, local access fees did not constitute a core expense or service under the Contract.

Now, under the new regulations, local access fees are the compensation paid to pay telephone owners for the cost of moving calls from a pay telephone to other local telephone carriers. *Illinois Pub. Telecommunication Assn. v. Fed. Communications Comm.*, 117 F3d 555, 559, clarified, 123 F3d 693 (D.C. Cir. 1997); see also 47 USC § 276 (b) (1) (A). As such, local access fees are not part of the toll-free cost.

Finally, on July 1, 1996, the Contract between DHR and Citibank was executed and incorporated by reference an addendum entitled "EBT Standard Terms and Conditions." In Paragraph III.C.1, the Contract contained the renegotiation provision.

In performance, Citibank provided the toll-free number at its cost through both automated and live customer service functions to respond to benefit recipients. However, IEI does not obligate Citibank to pay local access charges for pay telephones, so that benefit recipients may have access to the toll-free number at no cost to them. Under the former federal communications law and regulations, there had been no local access fee to connect to a toll-free number from pay telephones. Therefore, the Contract did not mention local access fees for pay phones to toll-free numbers, nor did the Contract contemplate such costs, because local access fees from pay tele-

---

[1] Several southern states, as the Southern Alliance of States ("SAS"), formulated the standard terms for the Contract and were individual parties to the Contract with Citibank with separate state agreements; Georgia was a member of the SAS.

phones to toll-free numbers did not exist when the Contract became final.

In 1997, the Federal Communications Commission ("FCC"), under the Act, promulgated new rules and regulations for the pay telephone industry that created local access fees. The FCC authorized owners of local pay telephones to charge a per-call local access fee for using a pay phone to call a toll-free number. Long after the Contract was being performed, this new regulation was promulgated on October 9, 1997. The Georgia Contract was formulated after the IEI was issued in early 1995, and Citibank's BAFO was submitted on September 26, 1995. Thus, Citibank had no way to protect itself except through the renegotiation provision which DHR agreed to include in the Contract or to terminate access to pay telephones.

Thus, in 1997, Citibank faced increased costs resulting from both a law and regulation change, requiring the Contract renegotiation under the Contract's clear and express terms. Therefore, DHR breached the Contract in refusing to renegotiate the cost for local access fees for pay telephone usage. See OCGA § 13-2-2 (4). DHR had a contractual duty to negotiate an increase in Citibank's compensation to reimburse the amount of the local access fees incurred. Upon DHR's refusal to negotiate an increase in Citibank's compensation, Citibank can decline to accept calls placed from pay telephones to the toll-free number without breaching the contract.

The parties reached a definite and final agreement that was legal and enforceable, and which had a provision for renegotiation of cost in the event of a contingency condition occurring, i.e., a change in law or regulations affecting the Contract, which was a condition subsequent. See *Roberson v. Eichholz*, 218 Ga. App. 511, 513 (1) (462 SE2d 382) (1995); *Cole v. Shoffner*, 205 Ga. App. 65, 67 (3) (b) (421 SE2d 322) (1992). The existence of a condition subsequent does not make the Contract vague or unenforceable where there existed mutuality of obligation at the time of performance. Where a contract is definite in terms, a condition precedent or a condition subsequent will not void the contract. See OCGA § 13-3-4; *Moore v. Buiso*, 235 Ga. 730, 731-732 (221 SE2d 414) (1975); *Fulton County v. Collum Properties*, 193 Ga. App. 774, 775 (1) (388 SE2d 916) (1989); *Rothberg v. Charles H. Hardin Constr. Co.*, 111 Ga. App. 41, 45-46 (140 SE2d 520) (1965). Where a contract has a condition subsequent, the occurrence may excuse performance or otherwise allow the contract to be modified. See generally *Winn v. Tabernacle Infirmary*, 135 Ga. 380, 383 (69 SE 557) (1910); *King Indus. Realty v. Rich,* 224 Ga. App. 629, 631-632 (4) (481 SE2d 861) (1997).

The new consideration for the modification in the Contract would be a higher fixed fee by DHR and acceptance of calls from pay telephones by Citibank. The general rule regarding an agreement to agree in the future has no application here, because there was a com-

plete agreement in all terms at the time of performance, i.e., a meeting of the minds and full performance by both parties in the first two years of the Contract, before the new regulations under the Act necessitated a change in the Contract. See, e.g., *Poulos v. Home Fed. Sav. &c. Assn.*, 192 Ga. App. 501, 503 (2) (385 SE2d 135) (1989); *Hartrampf v. C & S Realty &c.*, 157 Ga. App. 879, 881 (1) (278 SE2d 750) (1981); *Nuclear Assurance Corp. v. Dames & Moore*, 137 Ga. App. 688, 689 (225 SE2d 97) (1976). The terms of the Contract, while complex, were definite until the condition subsequent occurred; the renegotiation clause merely allowed performance under the fixed price and access by pay phone to be changed, if the condition subsequent occurred. See generally *Southeastern Underwriters v. AFLAC*, 210 Ga. App. 444, 446 (1) (436 SE2d 556) (1993).

In a public contract, the trial court has the special obligation of choosing among reasonable meanings of construction that serves the public interest. *Clear-Vu Cable v. Town of Trion*, 244 Ga. 790, 792 (1) (262 SE2d 73) (1979). While this contract is not ambiguous, if it were, the trial court's construction enforcing Paragraph III.C.1 to require renegotiation serves the public interest best, because such construction allows state or other governmental agencies to receive the lowest bid on contracts and also allows the bidder to eliminate the risk premium for contingencies that may never arise. If the condition subsequent arises, then the parties can address such change in fixed costs through subsequent contractual adjustment. Therefore, the trial court properly granted partial summary judgment in finding as a matter of law that DHR breached the Contract.

### Case No. A00A0676

2. Citibank contends that the trial court erred in granting DHR's motion for partial summary judgment with respect to its declaratory judgment action. We agree.

Under the Contract, Citibank had no duty to pay the local access fees and could deny access to its toll-free number to pay telephones, as found in Division 1. Since it had no duty to pay such local access fees, then it incurred an economic injury not provided for in the Contract by continuing to accept on its toll-free number calls from pay telephones for which it had to pay local access fees and which it had no duty to accept, and such condition continues into the future. DHR refused to renegotiate the fixed fees to allow Citibank to accept such calls from pay telephones on its toll-free number without continuing economic injury. However, DHR contended that Citibank had to continue to do so as part of the services that Citibank was obligated to render or be in breach of the Contract if it stopped accepting the pay calls on its toll-free number.

Clearly this was an actual controversy where the parties were uncertain and insecure in their rights as to obligations which were not covered by the Contract, i.e., the duty to provide access to its toll-free number to pay telephones. See OCGA § 9-4-2; *Calvary Independent Baptist Church v. City of Rome*, 208 Ga. 312, 314 (66 SE2d 726) (1951). The Declaratory Judgment Act is to be liberally construed to effect its purpose. *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 17 (413 SE2d 450) (1992). See also *Calvary Independent Baptist Church v. City of Rome*, supra at 314. Although DHR has been held to have breached its contract to renegotiate, such decision does not resolve Citibank's dilemma, because the Contract still has several years remaining, and Citibank will continue to incur economic loss if it has to accept the pay telephone calls on the toll-free number and incur the local access fees or risk suit for breach of contract if it denies access. This legal and factual situation constitutes a classic reason for declaratory relief because of uncertainty as to future action where rights have not accrued. *Atlanta Cas. Co. v. Fountain*, supra at 18; *Ins. Center v. Hamilton*, 218 Ga. 597, 600 (129 SE2d 801) (1963); *Enron Capitol &c. Corp. v. Pokalsky*, 227 Ga. App. 727, 729 (1) (490 SE2d 136) (1997); *Jahncke Svc. v. Dept. of Transp.*, 134 Ga. App. 106, 107-108 (2) (213 SE2d 150) (1975).

This is not a case in which declaratory judgment is sought to test the other party's defenses, because the action is to determine future action, i.e., whether Citibank has a contractual duty to pay the local access fees for pay phone access to its toll-free number as part of its obligation to provide customer service to benefit recipients; this action does not deal with accrued rights under the Contract for past conduct. Citibank wants to know if it can deny access to pay telephones, saving the cost of local access fees that cannot now be recouped. If Citibank has no duty to do so, but continues to pay, then it incurs unrecoverable economic losses for past local access fees paid voluntarily, but, if it stops access to pay phones, then it may be sued for breach of contract by DHR. Thus, this is not a case where state administrative procedure is available, has not been exhausted, is completed without appeal, or rights have accrued from prior action. See generally *State Health Planning Agency v. Coastal Empire Rehabilitation Hosp.*, 261 Ga. 832, 833 (412 SE2d 532) (1992); *Chambers of Ga. v. Dept. of Natural Resources*, 232 Ga. App. 632, 634 (502 SE2d 553) (1998). This is an actual controversy, which means "a justiciable controversy where there are interested parties asserting adverse claims on an accrued set of facts." (Citation omitted.) Id. Clearly Citibank is "walking in the dark as to what future position to take." (Citation omitted.) Id.

Construction of a contract is a question of law for the trial court. OCGA § 13-2-1. The cardinal rule of construction is to determine the

intent of the parties and apply the contract's clear intent when such intent does not contravene any rule of law. Id. There exists no jury question, even in the case of ambiguous contracts, unless such ambiguity remains after the trial court has applied all rules of construction. *F & F Copiers v. Kroger Co.*, 194 Ga. App. 737, 738 (1) (391 SE2d 711) (1990).

DHR, the Treasury, and the Southern Alliance of States drafted the Contract and, therefore, bear the consequences of any ambiguity being construed against them. OCGA § 13-2-2 (5); *Western Contracting Corp. v. State Hwy. Dept.*, 125 Ga. App. 376, 381 (1) (187 SE2d 690) (1972). They chose to use the toll-free number for long distance telephone access without any definition, limitation, or qualification within the Contract that would require Citibank to pay local access fees for pay telephone calls to the toll-free number. *F & F Copiers v. Kroger Co.*, supra at 739.

"Toll-free," regarding long distance telephoning, has a FCC definition which governs, absent an expression to the contrary clearly stated in the Contract, and the trial court must judicially notice such federal law. "Toll-free" simply means providing long distance calling without charge by the long distance carrier; it does not address local access fees by pay telephone to local telephone carriers. See 26 CFR § 49.4252-2 (a); 47 CFR § 52.101 (f); *Sims v. Southern Bell Tel. &c. Co.*, 111 Ga. App. 363, 364 (141 SE2d 788) (1965); see also 44 USC §§ 1507; 1510. Local access fees for pay telephones are access charges imposed by local telephone owners for moving a call from a pay phone to the local telephone exchange for purposes of routing the call to a long distance carrier. See FCC Order No. 97-371 (October 9, 1997), 47 CFR Part 64, Subparagraph M; see also 47 USC § 276 (b) (1) (A). Since "toll-free" has a well-understood technical meaning, then the trial court must apply such meaning. OCGA § 13-2-2 (2).

This Contract must be enforced according to its clear terms. *McCaughey v. Murphy*, 225 Ga. App. 874, 877 (2) (485 SE2d 511) (1997). The trial court, by way of construction, is prohibited from extending the contractual terms beyond what is fairly within the existing contract terms, i.e., requiring Citibank to incur the local access fees for pay phone calls to the toll-free number. Even though it would have been desirable for DHR to have made local access fees a part of the required customer service for benefit recipients, this was DHR's mistake, and the trial court cannot redefine toll-free number, customer service, scope of the Contract, or core service to imply an obligation that was never there under the Contract. *Ga. Ports Auth. v. Servac Intl.*, 202 Ga. App. 777-778 (1) (415 SE2d 516) (1992). The trial court cannot imply an obligation on one party to the Contract that is not fairly imposed under the express terms of the Contract. Here, local access fees were not in the contemplation of the parties

when the Contract was entered into, because local access fees resulted from subsequent regulations. *American Home Assurance Co. v. Smith*, 218 Ga. App. 536, 538 (1) (462 SE2d 441) (1995).

Citibank is entitled to the construction of the Contract that paying the local access fees from pay telephones to its toll-free number is not part of its obligation to provide a toll-free telephone number benefit recipient service and that it can refuse to accept such calls unless reimbursed by DHR under a renegotiated Contract. Thus, Citibank is entitled to declaratory judgment in its favor to that effect that it may cease receiving pay phone calls to its toll-free number.

*Judgment affirmed in Case No. A00A0675. Judgment reversed, vacated, and remanded with directions in Case No. A00A0676. Blackburn, P. J., concurs. Barnes, J., concurs fully in Case No. A00A0675 and concurs in judgment only in Case No. A00A0676.*

DECIDED APRIL 11, 2000 — ▮

Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, William C. Joy, R. O. Lerer, Senior Assistant Attorneys General, Michelle C. Egan, Assistant Attorney General, for appellant.

Alston & Bird, John E. Stephenson, Jr., Charles E. Young, Jr., James W. Hagan, Jeffrey J. Swart, for appellees.