A01A1836. McKESSON HBOC, INC. et al. v. ADLER.
(562 SE2d 809)

SMITH, Presiding Judge.

We granted this application for interlocutory appeal in order to consider the trial court's order directing McKesson HBOC, Inc. and HBO & Company ("McKesson") to produce documents McKesson contends are privileged and protected by the work-product doctrine. Because we conclude that the trial court failed to conduct the required investigation and analysis of McKesson's work-product claim or to rule on the merits of that claim, we vacate and remand for a determination of that issue. We affirm the trial court's decision, however, with respect to the attorney-client privilege, the denial of McKesson's motion for a protective order, and the denial of McKesson's motion to add a counterclaim.

This action was brought by Melvin Adler seeking damages from McKesson HBOC and HBO & Company after a merger in which HBO became a subsidiary of McKesson. Adler alleges that McKesson and HBO filed false financial statements in connection with their merger and that these false reports induced Adler to invest to his detriment.[1] During the litigation, Adler sought to obtain documents generated by McKesson during an investigation of the financial reports by McKesson's "audit committee," and McKesson objected. According to McKesson, these documents (which remain under seal) consist of interviews of 37 present and former employees, legal mem-

---

[1] According to McKesson, more than 80 federal lawsuits arising out of the merger (including 50 class actions) have been filed nationwide and consolidated in the Northern District of California.

oranda, and an audit committee report with supporting documents created from the interviews and memoranda.

The federal Securities and Exchange Commission, which filed briefs in this action here and below as amicus curiae, became involved in this matter shortly after the merger and McKesson's revision of its financial statements. According to the SEC's representative, it began an informal inquiry, and McKesson's audit committee authorized its counsel and accountants to cooperate fully with the SEC, "provided that a suitable confidentiality agreement was in place." A confidentiality agreement and supplemental agreement were entered into by McKesson, the audit committee, and the SEC.

In this litigation, the trial court ordered that McKesson produce "any and all materials sent to the Securities and Exchange Commission." Specifically, the trial court held that transmittal of the documents to the SEC waived the attorney-client privilege, that the accountant-client privilege "is against the interest of fairness and justice in this case and is void as it is against public policy," and that the accountant-client privilege had been "waived or is otherwise not applicable."[2] But the trial court did not address McKesson's claim of work-product protection, although that issue was raised below by McKesson as well as by the SEC amicus curiae.[3]

1. McKesson's enumeration of error concerning the work-product doctrine is dispositive of this appeal. McKesson complains that the trial court did not address its claim of work-product protection, that the trial court found no factual basis for waiver of the work-product doctrine, and that the findings required for waiver of work-product protection were not made. We agree.

The standard of protection under the work-product doctrine is high and contains very specific requirements for the trial court in considering such a claim. OCGA § 9-11-26 (b) (3) provides:

*Trial preparation; materials.* Subject to paragraph (4) of this subsection, a party may obtain discovery of documents and tangible things otherwise discoverable under paragraph (1) of this subsection and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the

[2] McKesson has withdrawn its enumeration of error with regard to the accountant-client privilege.

[3] The SEC has filed an amicus curiae brief in support of McKesson with respect to the trial court's first ruling only, and Albert J. Bergonzi, another defendant and former officer of McKesson, has filed a brief in opposition to his co-defendant McKesson, stating that he wishes to review these documents to further his own defense.

materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

"As we read the language of this subsection, it is obvious that documents, statements and other tangible items of evidence developed by one party in preparation for litigation are discoverable by the other party only in carefully limited circumstances." *Ga. Intl. Life Ins. Co. v. Boney*, 139 Ga. App. 575, 580-581 (3) (228 SE2d 731) (1976). The party seeking the trial preparation material must affirmatively show "a substantial need for the evidence and that undue hardship will result should the seeking party be required to develop the evidence by other means." *McKinnon v. Smock*, 264 Ga. 375, 376 (2) (445 SE2d 526) (1994). The trial court then may order the production of the material "following an in camera examination to ensure against disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." (Citations and punctuation omitted.) Id. This complex and fact-intensive process differs substantially from the analysis required for a claim of attorney-client privilege, which is narrowly construed, *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206, 208 (538 SE2d 441) (2000), and places the burden on the party asserting it to establish its applicability. *Zielinski v. Clorox Co.*, 270 Ga. 38, 40 (2) (504 SE2d 683) (1998). The trial court's ruling with respect to attorney-client privilege, therefore, sheds no light on whether the documents in question fall within the scope of the work-product doctrine.

Moreover, once the documents falling within the scope of work-product protection are determined, the trial court must consider the issue of waiver. While the trial court found that McKesson's claim of attorney-client privilege had been waived, once again the standards for determination of waiver are substantially different in the case of the work-product doctrine, with a much higher threshold than for waiver of attorney-client privilege. Compare *Zielinski*, supra at 40 (2) (forwarding copy of document to district attorney waived attorney-client privilege), and *Osborn v. State*, 233 Ga. App. 257, 260 (2) (b) (504 SE2d 74) (1998) (giving copy of statement to wife waived attorney-client privilege), with *McKinnon v. Smock*, 209 Ga. App. 647-648 (2) (434 SE2d 92) (1993), aff'd, *McKinnon v. Smock*, supra (disclosure to testifying expert does not waive work-product protection). In *McKinnon*, we found the work-product doctrine applicable even to documents prepared by an attorney for transmission to a third party, in direct contrast to the limits of the attorney-client privilege. To the extent a communication is made for the purpose of disclosure to a

third party, it is not protected by the attorney-client privilege in Georgia. *Tenet Healthcare*, supra at 209 (1).

More specifically, the purpose of the work-product doctrine is different from that of the attorney-client privilege. While the attorney-client privilege is intended to protect the attorney-client relationship by protecting communications between clients and attorneys, the work-product doctrine directly protects the adversarial system by allowing attorneys to prepare cases without concern that their work will be used against their clients. *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F2d 1414, 1427-1428 (3rd Cir. 1991). For this reason, the protection of work-product is not necessarily waived by disclosure to a third party. "Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information." Id. at 1428 (V); see also *In re Steinhardt Partners*, 9 F3d 230, 235 (2nd Cir. 1993); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 FRD 465, 479 (S.D. N.Y. 1993), and cases cited therein.[4]

McKesson argues that its cooperation with the SEC could not reasonably be construed as enabling an adversary to obtain the protected information, for three reasons: It was not adverse to the government; McKesson and the government "share a common interest in developing legal theories and analyzing information," *Steinhardt Partners*, supra at 236 (II); and McKesson obtained a written confidentiality agreement. Id. McKesson has presented some evidence in support of these contentions. The SEC acknowledged that McKesson was not the focus of its investigation; rather, the SEC sought to investigate "potential wrongdoing by former officers and employees, rather than current management who obtained their positions largely in reaction to accounting irregularities." The United States Attorney's office apparently has stated that McKesson was not a subject or target of its investigation. The SEC acknowledges that it shares certain interests with McKesson. With respect to the confidentiality agreement, the SEC argues that *Steinhardt Partners*, supra, recognizes the effectiveness of and necessity for confidentiality agreements and that it engages in such agreements on rare occasions to expedite its investigations. In this case, a district administrator for the SEC concluded that the information developed in McKesson's internal investigation was reliable, expedited the SEC's investigation, provided information not readily obtainable otherwise,

---

[4] This is a Georgia case applying Georgia law, but the parties have relied heavily upon federal decisions which have addressed these discovery issues in the context of similar litigation. Because Georgia's Civil Practice Act is modeled on the Federal Rules of Civil Procedure, decisions of the federal courts interpreting the federal rules are persuasive authority. *Ambler v. Archer*, 230 Ga. 281, 287 (1) (196 SE2d 858) (1973).

and significantly benefitted the SEC in its investigation. The SEC therefore urges that such agreements should not waive protection under the work-product doctrine for important public policy reasons.

The trial court is the trier of fact in discovery disputes. *Addington v. Anneewakee, Inc.*, 204 Ga. App. 521, 522 (420 SE2d 60) (1992). These material, disputed issues of fact must be addressed by the trial court and cannot be decided here. Both McKesson and Adler now argue that the evidence necessary to determine the application of the work-product doctrine is before this court and may be adjudicated without a remand, but we disagree. While the documents at issue and the contentions of the parties are physically present in the record, our law requires that the initial determination of the scope and extent of the work-product protection afforded these documents be made by the trial court. "This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it." *Pyle v. City of Cedartown*, 240 Ga. App. 445, 448 (3) (524 SE2d 7) (1999). Accordingly, the judgment of the trial court with respect to the production of documents is vacated, and this case is remanded for further proceedings consistent with this opinion.

2. The trial court correctly determined that the attorney-client privilege did not apply to the documents at issue here. As noted in Division 1, above, the scope of the attorney-client privilege is far narrower than that of the work-product doctrine, and it is far more readily waived by disclosure to a third party. Moreover, the SEC became involved in the investigation of this matter almost immediately, and the audit committee authorized its attorneys and accountants to cooperate with the SEC. Since McKesson contemplated that the documents would be provided to a third party almost from the inception of its investigation, the rule stated in *Tenet Healthcare*, supra, applies and the documents are not subject to the attorney-client privilege.

3. McKesson also enumerates as error the trial court's order granting Adler's motion to file more than 50 interrogatories and denying its motion for a protective order.[5] McKesson complains that Adler is improperly using requests for admission that are overbroad, cannot be simply admitted or denied, and are in effect interrogatories. McKesson also contends that Adler's requested discovery is irrelevant to the issues in this action. But our Supreme Court has held that requests for admission are not objectionable simply because they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case. *G. H. Bass & Co. v. Fulton*

---

[5] OCGA § 9-11-33 (a) (1) provides that the trial court may allow in excess of 50 interrogatories "upon a showing of complex litigation *or* undue hardship incurred if such additional interrogatories are not permitted." (Emphasis supplied.)

*County Bd. of Tax Assessors,* 268 Ga. 327, 329 (1) (486 SE2d 810) (1997). Moreover,

> [t]he courts of this State have long recognized the overriding policy of liberally construing the application of the discovery law. To hold otherwise would be to give every litigant an effective veto of his adversaries' attempts at discovery. The scope of permissible discovery is not, however, unlimited. OCGA § 9-11-26 (b) (1) provides that, as a general proposition, parties may obtain discovery regarding any matter, *not privileged,* which is *relevant to the subject matter involved in the pending action.* It is not ground for objection that the information sought will be inadmissible at the trial *if* the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(Citation and punctuation omitted; emphasis in original.) *DeLoitte Haskins & Sells v. Green,* 187 Ga. App. 376-377 (370 SE2d 194) (1988).

The grant or denial of a motion for protective order lies within the sound discretion of the trial court. *Bridges v. 20th Century Travel,* 149 Ga. App. 837, 838-839 (256 SE2d 102) (1979). Protective orders are *"intended to be protective — not prohibitive —* and, until such time as the court is satisfied by *substantial evidence* that *bad faith or harassment motivates the* discoveror's *action,* the court should not intervene to limit or prohibit the scope of pretrial discovery." (Citations and punctuation omitted; emphasis in original.) Id. at 839. In the absence of a showing of harassment, hardship, or a claim of privilege or other protection such as the work-product doctrine, as in Division 1, supra, McKesson has not shown that the trial court abused its discretion in denying the motion for a protective order.

4. Finally, McKesson complains of the trial court's order denying its motion to add a counterclaim. OCGA § 9-11-13 (f) provides: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." McKesson tacitly acknowledges that it has not shown "oversight, inadvertence, or excusable neglect." "Even if oversight, inadvertence, or excusable neglect [is] absent, a trial court should allow the counterclaim when justice requires; however, whether justice requires the grant of leave to set up an omitted counterclaim is a matter which addresses itself to the sound discretion of the trial court." (Citations and punctuation omitted.) *Meeker v. Eufaula Bank &c.,* 208 Ga. App. 702, 703 (1) (431 SE2d 475) (1993). McKesson argues that it should be allowed to assert its late counterclaim because it will not work any prejudice on

Adler and because the claim itself is meritorious. Adler counters that the claim is meritless and that McKesson has no standing to assert it. "[W]hether to allow such a filing even after the requisite showing is made is within the discretion of the trial court and will not be disturbed absent abuse." *Hovendick v. Presidential Financial Corp.*, 230 Ga. App. 502, 506 (6) (497 SE2d 269) (1998). We cannot say that the trial court abused its discretion in denying McKesson's motion to amend.

*Judgment affirmed in part, vacated and remanded in part. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 27, 2002.

*Morris, Manning & Martin, Joseph R. Manning, John H. Williamson, Claudia M. Anders, Henderson & Lipscomb, David S. Lipscomb*, for appellants.

*Bondurant, Mixson & Elmore, H. Lamar Mixson, Jill A. Pryor, Jason M. Freier, Paul, Hastings, Janofsky & Walker, John G. Parker, Kirkley & Payne, Dorothy Y. Kirkley, Julie R. Schwartz, Davidson & Tucker, Gerald Davidson, Jr.*, for appellee.

*William P. Hicks*, amicus curiae.