A07A1490. SMITH v. DEKALB COUNTY et al.

(654 SE2d 469)

ELLINGTON, Judge.

Philip Smith appeals from an order of the DeKalb County Superior Court granting a permanent injunction to Cathy Cox, in her official capacity as Georgia's Secretary of State.[1] Smith contends that the court erred in finding that the Secretary of State had standing to pursue the injunction, in granting the Secretary of State's request for temporary restraining orders and the permanent injunction, and in denying his motion to recuse. For the following reasons, we affirm.

The record shows the following facts. On October 23, 2006, Smith's attorney, Mike Raffauf, submitted a written request, pursuant to the Georgia Open Records Act, OCGA § 50-18-70 et seq., to Linda Latimore, the DeKalb County Director of Voter Registration and Elections, for disclosure of certain information concerning the 4th Congressional District 2006 primary and runoff elections. Raffauf requested that Latimore make available for copying and inspection the following materials:

A copy of the GEMS CD-ROM(S),[2] generated pursuant to OCGA § 21-2-500 (a)[3] and [Rule of the State Election Board]

---

[1] Cox's term as Georgia's Secretary of State has since expired. Karen Handel became Secretary of State on January 8, 2007.

[2] "GEMS" is an acronym for a software program known as the "Global Election Management System," which is produced by Diebold Election Systems. "CD-ROM" is an acronym for "computer disk – read only memory."

[3] OCGA § 21-2-500 (a) states as follows:

Immediately upon completing the returns required by this article, in the case of elections other than municipal elections, the superintendent shall deliver in sealed containers to the clerk of the superior court or, if designated by the clerk of the superior court, to the county records manager or other office or officer under the jurisdiction of a county governing authority which maintains or is responsible for records, as provided in Code Section 50-18-99, the used and void ballots and the stubs of all ballots used; one copy of the oaths of poll officers; and one copy of each numbered list of voters, tally paper, voting machine paper proof sheet, and return sheet involved in the primary or election. In addition, the superintendent shall deliver copies of the voting machine ballot labels, computer chips containing ballot tabulation programs, copies of computer records of ballot design, and similar items

183-1-12-.02 (6) (a),[4] which contains a copy of the information on each memory card (PCMCIA Card) which shall include all ballot images and ballot styles as well as vote totals and a copy of the consolidated returns from the election management system.

According to Raffauf's request, "[a] review of the entire GEMS backup CD-ROM(S) for both elections is the only way . . . to undertake a complete audit."

In response to the request, DeKalb County advised Raffauf by letter that it would produce the requested CD-ROM on November 9, 2006. The county also noted, however, that it was going to utilize the letter to "notify the Secretary of State [and] the Attorney General . . . of [its] impending release of the requested CD-ROM in the event they choose to take action." Further, the county refused to produce "documents or records that are not subject to production under the [Open Records] Act" and expressly reserved "any and all statutory exemptions from disclosure provided by OCGA § 50-18-72, and any and all other exemptions or protections provided by law, including but not limited to privileged and confidential documents."

On November 9, 2006, the Secretary of State objected to the open records request and filed a petition for a temporary restraining order ("TRO") and a verified complaint for a permanent injunction prohibiting DeKalb County from releasing the CD-ROM. After the trial court granted two TROs,[5] Smith intervened. The court conducted a hearing on the petition for a permanent injunction, and the Secretary of State and Smith presented evidence and argument. The court

---

or an electronic record of the program by which votes are to be recorded or tabulated, which is captured prior to the election, and which is stored on some alternative medium such as a CD-ROM or floppy disk simultaneously with the programming of the PROM or other memory storage device. The clerk, county records manager, or the office or officer designated by the clerk shall hold such ballots and other documents under seal, unless otherwise directed by the superior court, for at least 24 months, after which time they shall be presented to the grand jury for inspection at its next meeting. Such ballots and other documents shall be preserved in the office of the clerk, county records manager, or officer designated by the clerk until the adjournment of such grand jury, and then they may be destroyed, unless otherwise provided by order of the superior court.

[4] Ga. Comp. R. & Regs. r. 183-1-12-.02 (6) states, in pertinent part, as follows: Storage of Returns. (a) After tabulating and consolidating the results, the election superintendent shall prepare a CD-ROM which shall contain a copy of the information contained on each memory card (PCMCIA card) which shall include all ballot images as well as vote totals and a copy of the consolidated returns from the election management system.

[5] The record shows that the court initially granted a TRO restraining DeKalb County from releasing the CD-ROM on November 9, 2006. The court granted a second TRO on December 11, 2006.

permanently restrained and enjoined DeKalb County and Latimore from "releasing, disclosing, or providing to any person not authorized by law to obtain them copies of the pre-election and post-election CD-ROMs." Smith appeals from this order.

1. Smith claims that the trial court erred in finding that the Secretary of State had standing to object to his Open Records Act request. As the court found, however, the Secretary of State "is statutorily charged with the supervision of all elections in this State, and as such has a complete right to seek the Court's intervention in this matter." See OCGA §§ 21-2-30 (creating the State Election Board and naming the Secretary of State as the board chair); 21-2-31 (duties of the State Election Board); 21-2-32 (authorizing the State Election Board to institute or intervene in court actions involving elections); 21-2-50 et seq. (powers and duties of the Secretary of State regarding elections); 45-13-20 et seq. (general duties of the Secretary of State); see also *Ga. Dept. of Natural Resources v. Theragenics Corp.*, 273 Ga. 724, 725 (545 SE2d 904) (2001) (a corporation had the right to enjoin a state agency from allowing a third-party competitor to review the agency's file on the corporation, which included some of the corporation's trade secrets, after the third party filed a request with the agency under the Open Records Act).

2. Smith contends that the court erred in granting the permanent injunction. Smith claims that he is entitled to inspect the CD-ROM by running a copy on an independent computer which would enable him to examine the CD-ROM's computer codes to determine when various voting records were created and by whom, "to verify file formats, software versions, [and] file sizes" on the CD-ROM, and to look for evidence of irregularities resulting from election fraud and malfunctions of the electronic voting equipment and election software.[6]

> In determining whether the trial court's grant of a permanent injunction was proper, the standard of review on appeal is whether or not the trial court manifestly abused its discretion. A trial judge manifestly abuses his discretion when he grants an injunction adverse to a party without any evidence to support such judgment and contrary to the law and equity. Entry of a permanent injunction is appropriate in clear and urgent cases where there is a vital necessity to prevent a party from being damaged and left without an adequate remedy at law.

---

[6] Although Smith does not have the GEMS software necessary to access the encrypted information on the CD-ROM, his witness claimed he could break the encryption codes with software from other sources.

(Citations and punctuation omitted.) *City of Atlanta v. Southern States Police Benevolent Assn. &c.*, 276 Ga. App. 446, 458 (4) (623 SE2d 557) (2005). We conclude that the court's ruling that Smith is not entitled to a copy of the CD-ROM under the Open Records Act is proper for several reasons.

Under Georgia's Open Records Act,

[a]ll public records of an agency as defined in subsection (a) of this Code section, except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection by the general public, shall be open for a personal inspection by any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen.

OCGA § 50-18-70 (b). As the trial court found, the Georgia Code provides that the designated custodian of a CD-ROM created by the county or municipal superintendent of an election must maintain it *under seal* following the election for at least 24 months, unless otherwise directed by the superior court. OCGA § 21-2-500 (a);[7] see Ga. Comp. R. & Regs. r. 183-1-12-.02 (6) (storage of returns). The superior court in this case has not ordered that the seal be lifted as to the CD-ROM Smith seeks. Thus, because the CD-ROM is statutorily designated to be kept under seal, it is by law prohibited or specifically exempted from being open to inspection by the general public and, therefore, is not an open record subject to disclosure. OCGA § 50-18-70 (b). As a result, the trial court did not abuse its discretion in granting the Secretary of State's petition for a permanent injunction prohibiting the custodian from opening the record in response to Smith's Open Records Act request.

In addition, the trial court found, based on evidence tendered by the Secretary of State, that release of the CD-ROM, which contains passwords, encryption codes, and other security information, would compromise election security. As a result, the trial court ruled that the CD-ROM was exempted from the Open Records Act on the alternative basis of the exemption for "material which if made public could compromise security against sabotage, criminal, or terroristic acts." OCGA § 50-18-72 (a) (15) (A) (iv). See footnote 6, supra (regarding Smith's witness' claim that he could break the encryption codes with software from other sources). Although Smith argues that the

---

[7] After a minimum of 24 months after an election, the custodian shall present the sealed voting records to the grand jury for inspection at its next meeting. OCGA § 21-2-500 (a). After the grand jury adjourns, the custodian may retain the records under seal or destroy them, "unless otherwise provided by order of the superior court." Id.

State could copy the CD-ROM without including the passwords, encryption codes, and other security information, the Open Records Act specifically provides that the government agency is not required to create reports, summaries, or compilations that were not in existence at the time of the request. OCGA § 50-18-70 (d).[8] Accordingly, the trial court did not abuse its discretion in granting the Secretary of State's petition for an injunction on this alternative basis.

In sum, the record supports the court's finding that Smith is not entitled to a copy of the CD-ROM under the Open Records Act.

3. Smith argues that the court improperly granted the TROs and that a prior judge to whom the case had been assigned improperly denied his motion to recuse. The record shows, however, that Smith was not a party to this action when the court granted the TROs or when it denied the motion to recuse. Further, the judge who denied his motion to recuse was no longer assigned to the case at the time of the hearing on the request for a permanent injunction or the court's ruling thereon. Thus, these allegations of error lack merit.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 27, 2007 — 

*J. M. Raffauf*, for appellant.

*Thurbert E. Baker, Attorney General, Stefan E. Ritter, Calandra A. Almond, Assistant Attorneys General, William J. Linkous III*, for appellees.

---

[8] Notably, the evidence showed that DeKalb County has provided the voting records from the 2006 4th Congressional District primary to Smith, allowing his attorney to use a county computer that runs the necessary software so that he could review the records and providing him with print-outs of the information.