A08A0798. FULTON DeKALB HOSPITAL AUTHORITY
v. MILLER & BILLIPS.

(667 SE2d 455)

JOHNSON, Presiding Judge.

The law firm of Miller & Billips sued the Fulton DeKalb Hospital Authority ("the Authority") pursuant to the Georgia Open Records Act ("the Act"),[1] seeking disclosure of certain public records maintained by the Authority. Following a hearing, the trial court found that the records fell within the Act and ordered their disclosure. The Authority appeals, and for reasons that follow, we affirm.

The records at issue were generated during an internal investigation into allegations of sexual misconduct by members of the Authority's Human Resources ("HR") Department. In early 2006, the Authority received several anonymous complaints alleging misconduct by HR Department employees. Tracy Sprinkle Dawson, an attorney in the Authority's legal department, investigated the complaints "to assess the potential for litigation, analyze facts and defenses and prepare to defend possible lawsuits."

During the investigation, Dawson and Larry Matthews, the Authority's Manager of Security, interviewed numerous employees. Most of the interviews were tape-recorded, and Dawson also took notes. After pursuing various leads, Dawson prepared a written report for the Authority's General Counsel that summarized key interviews and offered recommendations.

In June 2006, Matthew Billips of Miller & Billips sent an Open Records Request to the Authority, seeking access to all records relating to the investigation, including witness statements, interview recordings, notes, and investigative reports. The Authority reviewed the request and turned over a few documents, but withheld numerous other records, including tape-recorded interviews, interview notes, and Dawson's final report to the General Counsel. According to the Authority, the withheld records fell within the attorney work product doctrine, placing them outside the Act's disclosure require-

---

[1] OCGA § 50-18-70 et seq.

ments.[2]

In response, Miller & Billips filed this Open Records action, seeking court-ordered disclosure of the records. The trial court subsequently directed the Authority to show cause why the records should not be disclosed. It also ordered the Authority to produce the records to the court for in camera inspection, and it set the matter for a hearing.

Following the hearing, and after reviewing the records in camera, the trial court rejected the Authority's work product claim. It found the materials subject to disclosure under the Act and enjoined the Authority from withholding them. This appeal followed.

1. As an initial matter, we must consider the proper standard of review. A trial court is vested with discretion in determining whether to allow or prohibit inspection of documents under the Act.[3] Application of the work product doctrine also falls within the trial court's discretion.[4] In our view, therefore, the trial court's ruling — which rejected the work product claim, enjoined the Authority from withholding the documents, and ordered their disclosure — must be reviewed for an abuse of discretion.

Arguing for a different standard of review, the Authority contends that the trial court's decision was, in essence, a summary judgment ruling. It thus claims that we must construe all evidence in its favor and review the lower court's ruling de novo, in accordance with OCGA § 9-11-56 (c). We disagree.

Neither the parties nor the trial court treated the proceedings below as a summary adjudication. The parties' various filings do not mention summary judgment. Instead, the briefs submitted to the lower court requested final resolution of the ultimate issues: whether the materials constituted work product, whether the Act required their disclosure, and whether the Authority should be enjoined from withholding them. To this end, the materials were presented for in camera inspection, the trial court held a hearing,[5] and the parties filed supporting evidence.

The appellate record shows that the parties submitted their dispute to the trial court for a final determination under the Open

---

[2] The Authority also argued below that the attorney-client privilege protected certain documents, but it has not pursued that claim on appeal.

[3] See *Bowers v. Shelton*, 265 Ga. 247, 249 (1) (453 SE2d 741) (1995); see also *Smith v. DeKalb County*, 288 Ga. App. 574, 576-578 (2) (654 SE2d 469) (2007) (trial court exercises discretion in determining whether disclosure of documents should be enjoined under the Open Records Act).

[4] See *Ford Motor Co. v. Gibson*, 283 Ga. 398, 401-402 (1) (659 SE2d 346) (2008); *Citadel Corp. v. Sun Chemical Corp.*, 212 Ga. App. 875, 877-878 (3) (443 SE2d 489) (1994).

[5] We do not know what was presented, argued, or said at the hearing because the Authority elected to omit the transcript from the record on appeal.

Records Act. Having acquiesced and participated in this effort, the Authority cannot now re-cast it as a summary judgment proceeding.[6]

2. The purpose of the Open Records Act " 'is to encourage public access to government information and to foster confidence in government through openness to the public.' "[7] The Act allows citizens to examine a government agency's public records, with the exception of those records "which are prohibited or exempted from public inspection by law or by court order."[8]

The Authority seeks to avoid producing materials based on the work product doctrine, a recognized exception to the Act's disclosure requirements.[9] Under that doctrine, documents and other tangible things prepared by or for a party "in anticipation of litigation or for trial" are shielded from disclosure.[10] Material is "prepared in anticipation of litigation . . . if reasonable grounds exist to believe that litigation is probable."[11] Ultimately, the work product doctrine "protects the adversarial system by allowing attorneys to prepare cases without concern that their work will be used against their clients."[12]

After reviewing the records in this case, the trial court concluded that they did not qualify as work product, despite the legal department's involvement in the HR investigation. According to the trial court, the investigation constituted a routine review of complaint allegations and was no different from investigations ordinarily conducted by the Authority's security department. It thus ordered disclosure of the withheld materials.

We find no error. The Authority commenced the internal investigation not in response to any claim or threat of litigation, but because it received several anonymous complaints regarding inappropriate sexual activity in the HR Department. One complaint

---

[6] See *Dortch v. Atlanta Journal & Atlanta Constitution*, 261 Ga. 350, 351 (1) (405 SE2d 43) (1991) (trial court did not err in entering final decision following interlocutory hearing in Open Records action where parties raised no objection to the procedure); *Davis v. Phoebe Putney Health Systems*, 280 Ga. App. 505, 506 (1) (634 SE2d 452) (2006) ("A party cannot participate and acquiesce in a trial court's procedure and then complain of it.") (citation omitted).

[7] (Citation omitted.) *Howard v. Sumter Free Press*, 272 Ga. 521, 522 (1) (531 SE2d 698) (2000).

[8] (Citation omitted.) Id. at 521-522 (1).

[9] See OCGA § 50-18-72 (e) (2) ("This article shall not be construed to repeal . . . [t]he confidentiality of attorney work product.").

[10] OCGA § 9-11-26 (b) (3); see also *McKesson HBOC, Inc. v. Adler*, 254 Ga. App. 500, 502 (1) (562 SE2d 809) (2002). Although there are limited exceptions to this general rule, see id., those exceptions are not at issue here.

[11] (Citation, punctuation and footnote omitted.) *Dept. of Transp. v. Hardaway Co.*, 216 Ga. App. 262, 263 (2) (454 SE2d 167) (1995), overruled on other grounds, *Johnson & Johnson v. Kaufman*, 226 Ga. App. 77 (485 SE2d 525) (1997).

[12] (Citation omitted.) *McKesson HBOC*, supra at 503 (1).

asked the Authority to investigate the situation, asserted that the hospital should not tolerate sexual harassment, and pleaded: "PLEASE HELP US." Another stated that employees desired to work in a professional environment and did not want to be pressured sexually. Noting that if "nothing is done [the offenders] will keep this up," that complaint similarly implored the hospital to "please help us."

Dawson testified below that, although the security department ordinarily conducted internal investigations, the legal department became involved here because the allegations related to "high ranking officers as well as employees named as defendants in lawsuits currently pending." Attorney participation, however, does not necessarily bring material within the work product protection.[13] No claims had been made or lawsuits filed regarding these particular allegations. And after reviewing the materials in camera, the trial court found that the investigation was merely a routine inquiry. In light of the actual anonymous complaints, which contained clear pleas for help, rather than litigation references, we cannot find that the trial court abused its discretion in reaching this conclusion.[14]

On appeal, the Authority argues that the trial court failed to consider whether it reasonably anticipated litigation. We disagree. The court explicitly determined that the Authority's investigation was a routine internal inquiry. In doing so, it implicitly found that the investigation was not undertaken in anticipation of litigation. The trial court's order also does not demonstrate any misunderstanding of the work product test. In fact, the court acknowledged — but evidently rejected — the Authority's claim that the circumstances surrounding the anonymous complaints presented "a realistic and immediate threat of litigation."

Particularly given the nature of the complaints, the evidence supports the conclusion that any expectation of litigation was based on speculation, rather than a reasonable belief of probable legal action.[15] Accordingly, we find no basis for reversing the trial court's work product ruling.

---

[13] See *Atlantic Coast Line R. Co. v. Gause*, 116 Ga. App. 216, 223-224 (1) (156 SE2d 476) (1967) (investigatory material generated during routine investigation did not fall within work product doctrine, even though investigation was conducted under direct supervision of attorney).

[14] See id.; compare *Lowe's of Ga. v. Webb*, 180 Ga. App. 755, 756-757 (350 SE2d 292) (1986) (materials generated during internal investigation following customer's injury at store were work product, rather than the result of a routine investigation, because shortly after the injury, customer's son stated that the store must pay for the injury and all expenses); *Warmack v. Mini-Skools Ltd.*, 164 Ga. App. 737, 739 (2) (297 SE2d 365) (1982) (internal investigation conducted by day care center after death of child was work product because, prior to investigation, child's father inquired about center's insurance coverage).

[15] See *Lowe's*, supra at 757 (work product protection does not apply to investigation

3. Finally, the Authority argues that the trial court "overstepped its function at the summary judgment stage" by weighing the evidence and resolving factual disputes. As discussed above, however, this was not a summary judgment proceeding. The parties presented the case to the trial court for resolution of the Open Records dispute and the Authority's work product claim. The trial court did not err in addressing the issues placed before it.[16]

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

## DECIDED SEPTEMBER 19, 2008.

*Hollowell, Foster & Gepp, Randy C. Gepp, Mary J. Huber*, for appellant.

*Miller & Billips, Matthew C. Billips*, for appellee.

---

conducted by a store following customer injury where anticipation of litigation "surely could be nothing more than speculation until the demands of the injured visitor are made known").

[16] See *Dortch*, supra at 351 (1).