**SECOND DIVISION**
**MILLER, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 21, 2016**

# In the Court of Appeals of Georgia

A15A1728. CHUA v. JOHNSON.

BRANCH, Judge.

Noel Chua appeals from an order of the Camden County Superior Court dismissing with prejudice Chua's complaint against Jackie Johnson, in her capacity as the District Attorney for the Brunswick Judicial Circuit (the "District Attorney" or the "District Attorney's office"). That complaint, which alleged a violation of Georgia's Open Records Act, OCGA § 50-18-70, et seq. ("ORA"), sought to require the District Attorney's office to provide Chua with a copy of a specific document contained in the District Attorney's files related to that office's criminal prosecution of Chua. On appeal, Chua contends that the trial court erred in refusing to order the District Attorney to provide him with the document at issue. Specifically, Chua asserts that the District Attorney's office failed to provide him with the timely and

detailed written notice required by ORA, setting forth the reasons for the office's refusal to produce the document at issue, and that this failure, without more, entitles him to that document. Chua also claims that the trial court erred by failing to hold an evidentiary hearing to determine whether the document in question falls within the attorney work-product exception to ORA. We agree with Chua that the District Attorney's response to Chua's document request failed to meet all of the requirements set forth in OCGA § 58-18-71 (d). We find, however, that such a failure does not automatically entitle Chua to the relief he seeks – i.e., the production of the document. We further find that we cannot determine from the current record whether the document in question falls within an exception to ORA. The trial court, therefore, erred when it refused to hold an evidentiary hearing on this issue.[1] Accordingly, we vacate the order of the trial court and remand the case for further proceedings consistent with this opinion.

---

[1] We emphasize that the ORA does not require the trial court to hold a hearing in every case where a dispute arises over whether the party making the ORA request is entitled to one or more of the documents requested. We find, however, that a hearing is necessary in this case because the contents of the document at issue reveal so little as to the document's provenance. Thus, an in camera inspection of the document itself did not provide the trial court with enough information to determine whether the document falls within an exception to ORA.

"A trial court is vested with discretion in determining whether to allow or prohibit inspection of documents under the Open Records Act" (*Fulton DeKalb Hosp. Auth. v. Miller & Billips*, 293 Ga. App. 601, 602 (1) (667 SE2d 455) (2008)), and we therefore review a trial court's ruling on that issue for an abuse of discretion, which "occurs where the trial court's ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." *Mathis v. BellSouth Telecommunications*, 301 Ga. App. 881, 881 (690 SE2d 210) (2010) (citation and footnote omitted).

The relevant facts are undisputed. In 2006, Chua was indicted in Camden County Superior Court on a number of criminal charges, including felony murder. See *Chua v. State*, 289 Ga. 220, n. 1 (710 SE2d 540) (2011). That same year, the District Attorney also filed a civil RICO action against Chua in Camden County Superior Court, and that action remains pending.[2] Following a jury trial in 2007, Chua was convicted of multiple counts, and the Georgia Supreme Court subsequently affirmed his conviction for, among other things, felony murder. *Chua*, 289 Ga. at 220, n.1. Chua thereafter filed a habeas corpus petition, which is currently pending in Bibb County Superior Court. Apparently in preparation for pursuing the habeas action, Chua's attorney filed an ORA request with the District Attorney's office seeking to review its case files in both the criminal and civil actions brought against Chua. Pursuant to this request, the District Attorney agreed to make the files available for

---

[2] There is nothing in the current record which indicates the basis for the RICO action.

3

personal inspection by Chua's attorney on July 24, 2013.[3] On December 23, 2013, following his July inspection of the files, Chua's lawyer sent a letter to the "Records Custodian" at the District Attorney's office requesting a copy of the document at issue in this case. That letter notes that counsel had conducted an "open records review" of the files from the civil and criminal cases against Chua in July of 2013 and then stated:

> As part of that review, one of the many documents provided for me was a six-page [sic] memorandum, without a named author, relating primarily to prospective jurors['4] relationships to [the] then [Camden County] Sheriff . . . . With this letter, I am formally requesting a copy of the aforementioned document, pursuant to OCGA § 50-18-70, et seq. I will be traveling in the Camden County area on Friday, December 27, 2013, and will [ ] therefore be able to come to your office to pick up the document in person, if convenient. Alternatively, if the document [can be located using] the above descriptive information, [transmission by] fax or U.S. mail is perfectly fine.

The Open Records Officer at the District Attorney's Office sent a written response to Chua's attorney on December 26, 2013, explaining that because of the

---

[3] See OCGA § 50-18-71 (a) ("[a]ll public records shall be open for personal inspection and copying, except those which by order of a court of this state or by law are specifically exempted from disclosure").

[4] Based on the trial court's order and the briefs of the respective parties, it appears that "prospective jurors" referred to prospective jurors in Chua's criminal trial. There is no evidence in the record, however, to explain why the District Attorney would be concerned with any relationship a prospective juror in Chua's criminal trial might have with the then-current Sheriff of Camden County.

staff shortage during the holiday season, the records could not be retrieved by December 27. The Officer also informed counsel that the estimated cost of retrieving the specific document requested was $56.64, and asked the lawyer "to let me know if this charge is acceptable and if you would like me to begin searching for said document." Defense counsel faxed a written response to the District Attorney's office on December 30, 2013, in which he agreed to pay the estimated charge for the document.

On January 3, 2014, an Assistant District Attorney ("ADA") telephoned defense counsel and left a voice mail message explaining that the ADA had reviewed the document at issue and determined that it was "a document prepared by an attorney in preparation for trial. So it is work product." The ADA therefore indicated that the District Attorney's office would not be producing the document. The ADA followed up this message with a letter, dated January 10, 2014 and faxed to defense counsel on January 13, in which he stated that "the document containing juror notes is not subject to the Open Records Act and will not be forwarded to you."

After the District Attorney's office refused to provide him with the requested document, Chua filed the current action on May 9, 2014. On January 13, 2015, he filed a motion for summary judgment seeking an order requiring the District

Attorney's office to provide him with the document at issue. Alternatively, Chua sought an evidentiary hearing to determine whether the requested document was subject to an ORA exception. The District Attorney opposed an evidentiary hearing, arguing that the privileged nature of the document was obvious from the contents of the memo itself. The trial court did not schedule a hearing and entered its order, dated February 9, 2015, on March 11. In that order, the trial court found that an evidentiary hearing was unnecessary and that "the Court is authorized to make a determination" as to whether the document was subject to the ORA by conducting "an in camera inspection" of the same. The Court further found that the District Attorney's voice mail message, left for defense counsel on January 3, 2014, was timely and complied with the requirements of ORA. Finally, the trial court held that the memo "deals with the [District Attorney]'s securing of information on jurors in anticipation of a jury trial and is covered by the confidential attorney work product exception" set forth in OCGA § 50-18-72 (a) (42). Chua now appeals from the trial court's order.

1. We first address Chua's claim that the trial court erred in finding that the January 3 response from the District Attorney's office to his ORA request satisfied the requirements of OCGA § 50-18-71. That code section provides, in relevant part:

> In any instance in which an agency is required to or has decided to withhold all or part of a requested record, the agency shall notify the

6

requester of the *specific legal authority* exempting the requested record or records from disclosure by *Code section, subsection, and paragraph* within a reasonable amount of time not to exceed three business days or in the event the search and retrieval of records is delayed pursuant to this subsection or pursuant to subparagraph (b) (1) (A) of this Code section, then no later than three business days after the records have been retrieved.

OCGA § 50-18-71 (d) (emphasis supplied). Chua contends that the January 3 voice mail left by the ADA and the ADA's January 10 letter confirming that message failed to comply with this provision because they were untimely and failed to inform him "of the specific legal authority exempting the requested record or records from disclosure by Code section, subsection, and paragraph." Chua further contends that this violation of ORA means that the District Attorney must provide him with the requested document.

(a) With respect to the question of whether the District Attorney provided an adequate response to Chua's ORA request, we agree with the trial court that the January 3 voice mail was timely.[5] It is undisputed that the office's initial response to

---

[5] We note that the current version of the ORA does not require that the agency's response to a request under the Act be in writing, a fact that Chua acknowledges in his appellate brief. See OCGA § 50-18-71 (b), (d).

Chua, in which it informed him that the records were offsite and told him the estimated cost of retrieving the document, was made within 3 days after Chua's request.[6] It is also undisputed that Chua's attorney did not respond to the District Attorney's office and agree to pay the estimated fee until December 30, 2013. Presumably, therefore, the records were not retrieved before that date. Even assuming that the records were retrieved on December 30 then, as the trial court correctly noted, January 3, 2014, was within three business days of December 30.[7]

Moreover, we note that the voice mail left by the ADA did set forth the legal basis for the District Attorney's decision to withhold the document, as the message informed Chua's attorney that the document constituted attorney work product. Despite this fact, however, and despite the timeliness of its response, the District

---

[6] OCGA § 50-18-71 (b) (1) (A) provides, in relevant part: " In any instance where records are unavailable within three business days of receipt of the request, and responsive records exist, the agency shall, within such time period, provide the requester with a description of such records and a timeline for when the records will be available for inspection or copying and provide the responsive records or access thereto as soon as practicable."

[7] As the trial court explained, January 1, 2014, was a legal holiday, making Friday, January 3 the third business day after Monday, December 30. And in his brief, Chua concedes that if the District Attorney's office "did not in fact retrieve the document until December 30, [the] voice mail [response] is arguably timely under . . . OCGA § 50-18-71 (d)."

Attorney's office did not comply with the letter of OCGA § 50-18-71 (d), because it failed to cite the "Code section, subsection, and paragraph" pursuant to which it was denying Chua's request. Given our history of strictly construing the requirements imposed by ORA, we must conclude that the District Attorney's failure to comply with the letter of the law violated that statute. See *Jaraysi v. City of Marietta*, 294 Ga. App. 6, 8-9 (1) (668 SE2d 446) (2008) (requiring strict compliance with that provision of ORA requiring an agency to cite the specific statutory subsection on which it was relying to deny the plaintiffs' ORA request) (footnote omitted). See also *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (when we apply a statute "we must presume that the General Assembly meant what it said and said what it meant") (citation and punctuation omitted); OCGA § 50-18-70 (a) (stating that it is the intent of the General Assembly that the ORA be construed in favor of granting access to public records). Accordingly, we agree with Chua that the trial court erred in dismissing his complaint under the Open Records Act. See *Jaraysi*, 294 Ga. App. at 9 (2) (because plaintiffs could show a violation of ORA, the trial court erred in granting summary judgment against them based on the fact that the city provided the requested documents after the plaintiffs filed their complaint).

(b) Despite Chua's argument to the contrary, however, the District Attorney's technical violation of ORA does not entitle Chua to an order requiring the District

9

Attorney to provide him with the document at issue.[8] Rather, Chua will be entitled to

[8] In support of this assertion, Chua appears to rely on that part of *Jaraysi* which held that the city's failure to enumerate a specific statutory exemption in its initial response denying the plaintiffs' ORA request meant that the city could not thereafter rely on that exemption to defend against the plaintiffs' suit for an ORA violation. 294 Ga. App. at 9 (1). That holding, however, was based on statutory language found in the former version of ORA which expressly precluded an agency from adding to or amending the exemptions it initially relied upon in denying the ORA request, except under limited circumstances that were not present in *Jaraysi*. Id. See also OCGA § 50-18-72 (h ) (2008). As part of the 2012 amendment of ORA, however, the language relied upon by the *Jaraysi* court was deleted from the statute. See Ga. L. 2012, p.218, §2.

Furthermore, the ORA sets forth the penalties for and procedures upon non-compliance, and there is no provision that would automatically entitle Chua (or any requesting party) to receive a disputed document where the agency in question fails to comply with ORA's requirements. Rather, OCGA § 50-18-74 (a) provides:

> Any person or entity knowingly and willfully violating the provisions of this article by failing or refusing to provide access to records not subject to exemption from this article, by knowingly and willingly failing or refusing to provide access to such records within the time limits set forth in this article, or by knowingly and willingly frustrating or attempting to frustrate the access to records by intentionally making records difficult to obtain or review shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not to exceed $1,000.00 for the first violation. Alternatively, a civil penalty may be imposed by the court in any civil action brought pursuant to this article against any person who negligently violates the terms of this article in an amount not to exceed $1,000.00 for the first violation. A civil penalty or criminal fine not to exceed $2,500.00 per violation may be imposed for each additional violation that the violator commits within a 12 month

the document only if, following an evidentiary hearing on remand, the trial court

determines that the requested document is not subject to the attorney work product

privilege. Should the court decide that Chua is entitled to the document, it may then

determine whether Chua is entitled to attorney fees under the statute.[9] Chua would

period from the date the first penalty or fine was imposed. It shall be a
defense to any criminal action under this Code section that a person has
acted in good faith in his or her actions.

Additionally, OCGA § 50-18-73 gives a requesting party the right to file an action
seeking any document that has been withheld. See OCGA § 50-18-73 (a). If the
requesting party prevails in such an action then, in addition to an order requiring the
agency in question to provide the disputed document, the requesting party may also
be entitled to recover reasonable attorney fees and costs. See OCGA § 50-18-73 (b).

[9] Whether Chua would be entitled to such fees is controlled by OCGA § 50-18-73 (b), which provides:

In any action brought to enforce the provisions of this chapter in which
the court determines that either party acted without substantial
justification either in not complying with this chapter or in instituting
the litigation, the court shall, unless it finds that special circumstances
exist, assess in favor of the complaining party reasonable attorney's fees
and other litigation costs reasonably incurred. Whether the position of
the complaining party was substantially justified shall be determined on
the basis of the record as a whole which is made in the proceeding for
which fees and other expenses are sought.

11

not, however, be entitled to compensatory or punitive damages. See *Wallace v.*
*Greene County*, 274 Ga. App. 776, 781 (2) (618 SE2d 642) (2005).

2. In his second enumeration of error, Chua argues that based on the evidence of record, the trial court erred in finding that the document at issue is protected from disclosure by the attorney work product privilege. We find that further proceedings are necessary before this issue can be decided.

ORA provides that "[p]ublic disclosure shall not be required for records that are . . . [c]onfidential attorney work product." OCGA § 50-18-72 (a) (42).[10] As a

---

[10] In its entirety, OCGA § 50-18-72 (a) provides that public disclosure shall not be required for:

> Confidential attorney work product; provided, however, that this paragraph shall not apply to the factual findings, but shall apply to the legal conclusions, of an attorney conducting an investigation on behalf of an agency so long as such investigation does not pertain to pending or potential litigation, settlement, claims, administrative proceedings, or other judicial actions brought or to be brought by or against the agency or any officer or employee; and provided, further, that such investigations conducted by hospital authorities to ensure compliance with federal or state law, regulations, or reimbursement policies shall be exempt from disclosure if such investigations are otherwise subject to confidentiality as attorney work product. In addition, when an agency withholds information subject to this paragraph, any party authorized to bring a proceeding under OCGA § 50-18-73 may request that the judge

12

practical matter, there are two distinct categories of attorney work product: general

work product and opinion work product. "General" work product would include

"documents and tangible things . . . prepared in anticipation of litigation or for trial

by or for another party or by or for that other party's representative[.]" OCGA § 9-11-

26 (b ) (3). These items are subject only to a qualified privilege, which may be

abrogated when a party seeking those items can prove both that he has a "substantial

need" for the items to prepare his case sufficiently and "that he is unable without

undue hardship to obtain the substantial equivalent of the materials by other means."

OCGA § 9-11-26 (b) (3). See also *McKesson HBOC, Inc. v. Adler*, 254 Ga. App. 500,

501-503 (1) (562 SE2d 809) (2002) (referring to items that have the qualified

privilege as coming under the "work product doctrine").

"Opinion" work product would include those trial preparation materials that

contain "the mental impressions, conclusions, opinions, or legal theories of an

---

of the court in which such proceeding is pending determine by an in
camera examination whether such information was properly withheld[.]

Documents that are subject to the attorney client privilege are addressed in OCGA §
50-18-72 (a) (41), which provides that "[p]ublic disclosure shall not be required for
records that . . . [contain] communications subject to the attorney-client privilege
recognized by state law[.]"

13

attorney or other representative of a party concerning the litigation." OCGA § 9-11-26 (b) (3). See also *McKinnon v. Smock*, 264 Ga. 375, 377-378 (2) (445 SE2d 526) (1994) (referring to such items as "opinion work product"). Unlike the qualified privilege afforded other work product, opinion work product is entitled to an absolute privilege and is therefore absolutely protected from disclosure. Id. See also *St. Simons Waterfront v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 429-430 (2) (746 SE2d 98) (2013). As our Supreme Court has explained, opinion work product is entitled to a higher degree of protection "because there is a 'higher value' to be served in protecting the thought processes of counsel." *McKinnon*, 264 Ga. at 378 (2) (citation omitted). Thus, "[t]he protection afforded opinion work product creates an environment in which counsel is free to think dispassionately, reliably, and creatively both about the law and the evidence in the case and about which strategic approaches

14

to the litigation are likely to be in his client's best interests." Id. at 377 (2) (citation and punctuation omitted).[11]

We emphasize, however, that the mere fact that an attorney has drafted or participated in the drafting of a certain document does not mean that the document is privileged. See *Fulton DeKalb Hosp. Auth.*, 293 Ga. App. at 604 ("[a]ttorney participation, however, does not necessarily bring material within the work product protection") (footnote omitted). See also *St. Simons Waterfront*, 293 Ga. at 429-430 (2), citing *McKinnon*, 264 Ga. at 376 (2). Rather, to bar disclosure, the party asserting the privilege bears the burden of proving both that the document was prepared by its

_____

[11] In his brief, Chua argues that OCGA § 50-18-71 (a) (42) narrows the definition of attorney work product so that the exception applies only to opinion work product and not to general work product. In support of this argument, Chua relies on that part of OCGA § 50-18-71 (a) (42) that states: "provided, however, that this paragraph shall not apply to the factual findings, but shall apply to the legal conclusions, of an attorney conducting an investigation on behalf of an agency . . . ." Chua's argument as to the statute's "narrow definition" of attorney work product, however, ignores additional relevant language found in the statutory subsection. As set forth supra at note 10, OCGA § 50-18-71 (a) (42) provides that the attorney work product exception will not apply to "factual findings . . . of an attorney conducting an investigation on behalf of an agency *so long as such investigation does not pertain to pending or potential litigation, settlement, claims, administrative proceedings, or other judicial actions brought or to be brought by or against the agency or any officer or employee . . . .*" In other words, the exception does apply to any investigation and report thereof that was "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative[.]" OCGA § 9-11-26 (b ) (3).

15

attorney or other representative and that it was prepared in anticipation of a court action. OCGA § 9-11-26 (b) (3); *Gen. Motors Corp. v. Conkle*, 226 Ga. App. 34, 46 (2) (486 SE2d 180) (1997). And when documents to which a party might otherwise be entitled contain absolutely privileged material – i.e., the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" – the trial court may conduct an in camera review to determine whether the privileged portions of the document may be successfully redacted prior to ordering their production. *St. Simons Waterfront*, 293 Ga. at 429-430 (2) (citation and punctuation omitted).

Bearing these principles in mind, we turn to the document at issue in this case. The record shows that the document is a two-page, undated communication, with no identified author or recipient. The author asks the recipient to "drop me a reply and let me know you received it." The document begins, "[h]ere are the notes," and states that "[t]hese notes are a composite of several people reviewing the list." There is no indication of who those "several people" might be. Although there is no evidence in the record regarding the subject of the document, the parties appear to agree, and the trial court appears to have assumed, that the author and others had reviewed the allegedly sealed list of potential jurors on the venire panel for Chua's criminal trial

16

and were providing information as to whether certain jurors did or did not have ties to the then Camden County Sheriff. The memo contains five paragraphs of information and then lists 21 individuals by name and a three-digit number (presumably their juror number). It then provides some information regarding each of those individuals.

Given the lack of information regarding the document's author or authors,[12] its recipients, and the circumstances under which it was written, we find that an evidentiary hearing is required so that the information necessary to a determination of the document's status can be obtained. Once the trial court has obtained the relevant information about who created the document, for whom it was created, and why it was created, the trial court should determine whether the evidence shows that the document constitutes attorney work product. If the document does constitute such work product, the trial court should then determine whether it contains "the mental impressions, conclusions, opinions, or legal theories of an attorney or other

---

[12] The memo does contain the author's office and cell phone numbers. In his complaint, Chua asserted that these numbers belonged to an individual who in 2007 was both an attorney in Camden County and was serving on the Camden County Commission. In her answer, however, the District Attorney denied this assertion. Given these facts, and given that the record contains no other information regarding the document's origins, it is impossible for this Court to determine its author or authors at this point.

17

representative of a party concerning the litigation." OCGA § 9-11-26 (b) (3). If the document does contain such absolutely privileged material, then the court should also determine whether the entire document is privileged or whether the privileged information could be successfully redacted and the redacted document provided to Chua.

If the document contains general work product such that only a qualified privilege applies (or if any opinion work product containing absolutely privileged material has been redacted), the court should consider whether the procedure set forth under OCGA § 9-11-26 (b) (3) applies to requests made under ORA where the responding agency claims an exemption for attorney work product.[13] If that procedure does apply, the court must then determine whether Chua can meet his burden of showing both that he has a "substantial need" for the items to prepare adequately for his habeas case and "that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." OCGA § 9-11-26 (b) (3).

---

[13] We realize that this issue is a question of law. Neither of the parties briefed this question, however, and under the circumstances "it seems most appropriate to leave it to the trial court on remand" to require the parties to address this issue in the first instance. *Deal*, 294 Ga. at 187 (3).

For the reasons set forth above, the order of the trial court dismissing with prejudice Chua's complaint under the Open Records Act is vacated. The case is remanded with direction.

*Judgment vacated and case remanded with direction. Miller, P. J. and Mercier, J., concur.*